## No. 10,037.

### STATE OF LOUISIANA VS. CLIFTON CANNON, SHERIFF, ET AL.

1. The plea of want of previous tender as a condition precedent to the institution of suit to annul a judicial sale is not applicable to tax sales.

2. The Constitution declares that no sale of property for taxes shall be annulled for any informality in the proceedings until the price paid, with 10 per cent. interest, be tendered to the purchaser, and that provision has been construed to mean that tender may be made at any time prior to final judgment, or that the price may be liquidated and adjusted in the judgment.

#### ON REHEARING.

1. The court below decides a cause on whatever point it deems material, but it is the duty of this court to revise its judgment, not the *grounds* upon which it is rendered. Its decision compels us to examine the case on all the grounds it presents, if that be necessary to a rightful determination of the case.

2. Section 1 of Act 80 of 1888 requires that the tax collector shall prepare a complete list of all immovable property bid in for and adjudicated to the State, as shown by the records of the conveyance office, which have not been disposed of or redeemed, and transmit same to the auditor of public accounts for comparison with the records of property adjudicated to the State, on file in his office; said list, when corrected and approved by the auditor, shall be returned as approved to the tax collector, and it shall be the warrant of authority to him to advertise said lands for sale.

3. Without strict compliance with the provisions of this act a tax collector is not authorized to make sale of State lands, and an adjudication thereof without such compliance is absolutely void and conveys no title.

4. In case of such sale being made, and of the purchase price being put to the tax collector's credit on the treasurer's suspense account, the State does not become responsible to the bidder for its restitution upon the revocation of the sale. He must look to the proper accounting officers of the government, in due course of settlement and law.

APPEAL from the Twelfth District Court for the Parish of Avoyelles. *Coco, J.*

*H. G. Morgan* and *T. H. Thorpe* for Plaintiff and Appellant:

The doctrine of tender as a prerequisite to a suit to annul a sale made under the tax laws of this State is not sustained by authority; even where such condition has been imposed by statute, grave doubts have been expressed as to its validity, and it has been construed with great strictness. 33 An. 528.

Before the exception of want of tender can be sustained, it must surely be made to appear to the court that there is reimbursement due; even in such a case it has been held that the State can not be coerced into compliance with the rule.

Though the general authority for a fiscal sale be contained in a statute, an executive warrant is the *sine qua non* to its validity; without such warrant the officer is incompetent to divest ownership. The primary authority to sell in the suit at bar was Act 80 of 1888; the final authority was the list compared, corrected and approved by the auditor, which constituted the executive warrant; without this list in his hands the tax collector had not the right even to advertise the property for sale.

*E. J. Joffrion* and *J. C. Cappell* for Defendants and Appellees.

The opinion of the court was delivered by.

WATKINS, J. The object of this action is to have declared null and void a tax adjudication of real property situated in the parish of Avoyelles on the ground that it was a non-consummated sale for want of due compliance by the tax collector with a condition precedent, claim being made that it had been adjudicated to J. H. Bemiss, of the State of Texas, one of the defendants, under and by authority of Act 80 of 1888.

The property in controversy was sold to the State in 1885 for the delinquent taxes of antecedent years, and certain of the heirs of J. A. D. Tureaud and Madam George Sauvé made application for their redemption, and the negotiations therefor had been well nigh completed when the complained of adjudication took place.

On account of the alleged irregularities in the tax collector's proceedings the attorney general, in the name of the State, demands their revocation and annulment, and the restitution of the *status quo*.

To be more specific, the contention of the State is, that prior to said adjudication the tax collector failed to submit to the auditor of public accounts a list of said lands for comparison with records of property adjudicated to the State and secure his approval before offering same for sale; and that such comparison and approval was a condition precedent to such sale, and without it the tax collector had no warrant of authority for making sale and that the adjudication was void without it.

Preliminarily, the defendants tendered a series of exceptions to plaintiff's suit, one of which was want of tender, coupled with the averment "that plaintiff, as vendor, has accepted and still holds the purchase price of said property."

This, with other exceptions, was by the court referred to the merits, and the defendants filed answers and the case went to trial on the merits and exceptions. But the court, finding that the plea of want of tender was well taken, grounded its judgment upon it and non-suited the case, and the State has appealed. Hence, the only question we have to deal with is this ruling of the judge of the court below.

Considering the question of tender, we find in the petition the allegation that "the *State* has never received any part of the sum of $1057 recited as the consideration for said pretended act of adjudication, and that the sum, if paid by said Bemiss, has ever since remained in the hands of said Cannon"—the tax collector who is defendant.

This allegation is plainly an offset to the exception. In the face of this specific averment in the petition, that the State had *never received any part* of the alleged price of sale, we are at a loss to understand why the plea was tendered, very much less, entertained. The *fact* of receipt *vel non* by the State of the proceeds is disputed on the one hand and affirmed on the other, and constitutes the question one for the merits, and, what is termed and treated as an exception, must be considered as a part of the answer. For it is a very plain question, that we must go into the merits, in order to determine the *fact* of payment to and receipt by the State of the proceeds of sale.

But in the case of Stafford vs. Twitchell, 33 An. 520, this court had occasion to examine the question of want of tender, as applicable to tax sales—if, indeed, it be a question here, for determina-

State vs. Sheriff et al.

tion as a matter of law—and, in that connection, we had occasion to hold that our predecessors had acted without sufficient consideration in deciding in Barrow vs. Lapine, 32 An. 310, that this plea had applicability thereto, and said:

"We do not find this doctrine, as applicable to tax sales, sustained by authority."

This principle of construction has never been departed from since, but, on the contrary, has been constantly maintained. Guidry vs. Broussard, 32 An. 924; Davenport vs. Knox, 34 An. 407. Those decisions are strictly conformable to prior jurisprudence. Brooks vs. Hardwick, 5 An. 675, and Coleman vs. Baker, 24 An. 524.

But the question of tender is not an open one, because it is defined expressly in the Constitution, and the constitutional definition has been recently interpreted by us.

In Breaux vs. Negrotto, 43 An. 426, we said:

"It is sufficient for us to say that the provisions of Art. 210 of the Constitution do not seem to contemplate a ' previous legal tender ' of the price of adjudication being made—such as is contemplated in C. P. 407, et seq., and R. C. C. 1933, et seq., and 1911, et seq. —as a condition precedent to the institution of the suit for rescission of the sale. It declares: 'No sale of property for taxes shall be *annulled* for any informality in the proceedings until the price paid, with 10 per cent. interest, be tendered to the·purchaser.' Constitution, Art. 210.

" We think the tender may be made at any time prior to the rendition of final judgment decreeing the nullity of the sale; or the price may be adjusted and liquidated in the judgment.

"Certain it is that the constitutional mandate must be carried into effect, and the tax purchaser must be compensated, and the judgment annulling the sale can not be completed until that is done."

To that view and opinion we adhere, and it is conclusive of the question under consideration.

The judgment appealed from is erroneous and must be reversed.

It is therefore ordered and decreed that the judgment appealed from be and the same is annulled and reversed; and it is further ordered and decreed that the cause be remanded to the lower court, and therein reinstated for trial on the merits; and that the defendants' plea of want of tender stand as a part of their answer.

It is finally ordered that the defendants and appellees be taxed

47

with the costs of appeal, and that all other costs to await final determination of the cause.

### ON APPLICATION FOR REHEARING.

We are requested to grant a rehearing, recast our opinion and decide the case on its merits because the interest of the State might be jeopardized by the protracted delay occasioned by remanding the cause; and counsel for plaintiff, in support of their application, refer to the fact, which is evidenced by the record, that the case was tried on the merits, contradictorily and upon issue joined on answer.

Whilst this statement is correct, yet because the judge *a quo* confined his decree to the plea of want of tender, and, finding it good, dismissed the case, we limited our judgment to that finding, reversed the judge's ruling and remanded the cause for trial and decision on the merits, following the precedent of Connery vs. Waterworks, 39 An. 770.

The plea of the plaintiff is persuasive as well as urgent, and much inclines us to its favorable consideration; and in its support the counsel cite the opinion of Judge Martin, speaking for the court, in Kenner vs. Their Creditors, 3 N. S. 51, who puts the proposition in this wise, viz.:

" It is obvious that this is not a sufficient cause to authorize us to refuse to act on the whole case.

"The court below decides a cause on whatever point it deems material; our duty is to revise its judgment, not the grounds on which it is rendered.   Its decision on the merits requires, nay, compels, us to *examine the case on all the grounds which it presents*, if that be necessary to a rightful determination of the case; for the error of the judge *a quo*, for which relief is sought at our hands, may be his failure to take into consideration an objection on which his judgment is silent.   Under the principle contended for there might be as many appeals as points in a case, if he acted on only one at a time and decided erroneously.   (Italic ours.)

" It has been the uniform practice of this tribunal, as it is the real intent of the statute, that the decision of the first judge on the merits, brings up the whole case.   The contrary doctrine would be productive of intolerable expense and *delay*."

Applying that principle to this case the conclusion appears to be quite irresistible that, inasmuch as it was *tried* upon its merits;

upon issue joined and testimony adduced; though the judgment was restricted to a solitary issue, it is our duty, in revising it on an appeal, " to examine the case on all the grounds which it presents, if considered necessary to a rightful determination of the case," and decide it accordingly.

Upon this hypothesis we have concluded to grant the relief prayed for, and decide the case upon its merits.

A correct recital of the issues involved will be found in our original opinion, and it is specially referred to; and the substance of which is that the defendant, as tax collector, proceeded without due authority in attempting to make the sale in question of State lands, having failed to procure the proper authorization from the auditor of public accounts as the statute required him to do.

Defendants—the sheriff and *ex-officio* tax collector, joined by the alleged adjudicatee—in their answer reiterate their exceptions, and plead the general issue, affirming the validity of the sale. Coupled therewith, is a plea of prescription of one, two and three years, in bar of plaintiff's right of redemption.

It may be well to premise that this is a suit brought by the State through the attorney general, claiming to be "the true and lawful owner" of the lands in controversy, and denying the legality of the tax collector's pretended adjudication thereof to his co-defendant, Bemiss, on the ground stated above.

The original owner and tax debtor, whose title was expropriated at tax sale in 1885 and adjudicated to the State, is not a party, either plaintiff or defendant, and consequently his right of redemption is not an issue in the case.

The law invoked by the State is Act 80 of 1888, Sec. 1 of which declares "that it is hereby made the imperative duty of each collector of the State taxes throughout the State to prepare, within two months after the expiration of the year in which the property must be redeemed * * * a complete list of all immovable property bid in for and adjudicated to the State for the taxes of the year 1880 and subsequent years, as shown by the records in the conveyance office * * * which have not been otherwise disposed of by the State, and not redeemed within the time prescribed by law; *which list shall be transmitted to the auditor of public accounts for* comparison with the records of property adjudicated to the State, on file in his office; and, when corrected and approved by the auditor of public accounts, the same shall be returned as approved

to the collector. Upon receiving said list it shall be the duty of the collector to proceed at once to advertise for sale all immovable property appearing upon said list, and which has been heretofore bid in for and adjudicated to the State," etc.

The sheriff's *proces verbal* of sale to Bemiss recites that it was intended to be made in pursuance of and conformably to the provisions of that act, but it does not contain any recital to the effect that he had complied with its specified conditions precedent.

Not placing full reliance upon the *absence* of such recital, the plaintiff exercised the precaution of interrogating the auditor, who, as a witness, states that, subsequent to the adjudication in question, Cannon, sheriff, made up a list of lands in the parish of Avoyelles, which had been sold by him under the Act of 1888, including those adjudicated to Bemiss, and caused same to be filed in his office, and that he at once attracted his attention to the fact that he had failed to comply with the provisions of that act, above quoted, and inclosed a copy of the act to him, and at the same time advising him of the necessity of his transmitting to him for comparison and approval a list of lands adjudicated to the State.

He further states that he notified the sheriff of the fact that there were then pending negotiations for the redemption of the lands in controversy, as a reason why a description of same, *as lands to be advertised for sale,* should not be included therein; and he examined, compared and approved the list without enumerating same, and returned it according to law; but he affirms that he received no reply to said instructions and advice.

The statements of the auditor are in no way controverted by the defendants, and they may be accepted as absolutely true; and, taking them as true, the sale proceedings of Cannon, sheriff, were altogether unauthorized. He made up a list of lands *he had already adjudicated to the defendant* and other persons under the supposed authority of the Act of 1888, in lieu of having made up a list of *lands which had been previously adjudicated to the State,* and furnished same to the auditor for examination and approval, *preparatory to sale.*

It is evident that the sheriff acted without *any* warrant of law in attempting to make sale of State lands as he did, and that said proceedings and adjudication are void absolutely, and confer no title on Bemiss.

Adjusting the question of purchase price, the evidence applicable seems to be as follows:

State vs. Sheriff et al.

That on the 4th of March, 1890, the adjudication complained of having been made and completed on the 2d of March, 1889, and this suit having been instituted on the 1st of March, 1890, Cannon, sheriff, forwarded his check for $1847.33, covering amount of proceeds of sale of the property in contest, amongst others, to the treasurer, to be held in abeyance until said sales could be checked up and audited in the auditor's office. Of this check or draft the auditor speaks as a witness, viz.: " I received a draft to cover the settlement, which I have collected and deposited with the treasurer, to be held until such time as the list can be checked, audited and approved. This money is to the credit of the ' suspense account,' and *not actually covered into the State treasury, as all or any part of it can be withdrawn without any warrant, and will be so held until Mr. Cannon's list can be audited and approved.*' "

This statement is neither denied nor its accuracy questioned, and taking it as true, there can not be a doubt of the correctness of the averment of the plaintiff's petition "that the State has never received any part of the sum of $1057 recited as the consideration of said pretended sale." It is evident that the production and deposit of money under the circumstances detailed, *subsequent to institution of suit by the State*, could not impair or prejudice her claims, or put upon her any obligation for its restitution. In our opinion the defendant's demand of the State for the restitution of the price paid can not be favorably entertained. The adjudicatee has his recourse against the proper State officers in due course of settlement and law, but he is not entitled to relief in this suit.

It is therefore ordered, adjudged and decreed that the judgment and decree hereinbefore rendered be vacated and set aside, in so far as it ordered the case to be remanded to the lower court for further proceedings; and it is now ordered and decreed that there be judgment upon the merits of the case in favor of the State, as plaintiff, annulling and revoking the adjudication complained of, to Bemiss, and maintaining her title.

It is further ordered that the demands of the defendants be rejected at their cost in both courts. But equity requires that the effect of this decree be suspended, and the State take nothing thereby until the purchase money is restored to the defendants, and it is so ordered.

Defendants' and appellees' right to apply for a rehearing is reserved.