YAZOO & MISSISSIPPI VALLEY RAILROAD CO. ET AL. *v.* WIRT ADAMS, STATE REVENUE AGENT, ET AL.

1. RAILROAD COMMISSION. *Assessment of taxes. Property that escaped taxation. Code* 1892, § 3875; *Acts* 1894, *p.* 29.

   Section 3875, code 1892, empowering the state railroad commission to assess railroad property, relates only to the future, but under § 4 of the act of 1894 (Laws, p. 29), on notification by the state revenue agent, it is authorized to assess property of that description that had escaped taxation during any former year, not earlier than the year 1886, as well as during years subsequent to the adoption of said code.

2. CHANCERY COURT. *Injunction. Illegal collection of taxes. Assessment. Code* 1892, §§ 483, 484, 561.

   The power of the chancery court, under § 483, code 1892, to restrain the collection of taxes levied or attempted to be collected without authority of law, does not warrant an injunction to restrain the railroad commission from assessing railroad property that has escaped taxation during former years, for that court has neither the power nor the machinery to make an assessment of such property for *ad valorem* taxation, and it could not comply with §§ 484, 561, code 1892, whereby it is prohibited from granting an injunction to restrain the illegal collection of taxes unless the complainant shall first give bond in a penalty at least double the amount of the taxes sought to be enjoined, conditioned for their payment, and is required, in case of the dissolution of the injunction, to enter a decree against the complainant and his sureties for the amount of the taxes enjoined and ten per centum thereon, besides costs.

FROM the chancery court of the first district of Hinds county. HON. H. C. CONN, Chancellor.

Suit by Yazoo & Mississippi Valley Railroad Co. against Wirt Adams, as State Revenue Agent, and the State Railroad Commission to enjoin defendants from further proceeding in the assessment of its property mentioned in the opinion. From a decree dissolving the injunction complainant appeals.

*Mayes & Harris,* for appellant.

The railroad commission has no jurisdiction to assess railroad taxes back of the year 1892. It was established by the act of 1884 for the supervision of common carriers. Its powers and functions, as defined by the act of its creation, were only such as are ordinarily exercised by a railroad commission. It was not brought in touch with the question of railroad taxation until April, 1892. Prior to that time that function was discharged by a distinct board, composed of the auditor, secretary of state and attorney-general. When it was vested with this function, the power conferred upon it was entirely new and special, and in discharge of it the commission is as distinct a legal entity as if it were a different body of individuals. The legislation on the subject in the code is not incorporated into the chapter on the supervision of common carriers, but is a subordinate feature of the chapter on public revenue, just as it was in the code of 1880. For the purpose of this case, the provisions of the code of 1892 must be taken as the whole law on the subject, and cannot be aided by any reference to the chapter on supervision.

Before this board or any official shall have power to discharge the function of assessing taxes, that tribunal or officer must be able to point out some express statute by which the power is conferred. The language of the code of 1892 is entirely prospective. There is not a single expression authorizing this board to assess taxes anterior to those for the year 1892. In our fiscal system the sheriff, and not the tax assessor,

is the assessor of back taxes, and the assessor cannot do it after he has turned his rolls over to the supervisors. The sheriff does it for the reason only that there is an express section in the code giving him that power. This board is nowhere authorized to assess taxes which should have been assessed by somebody other than themselves, before the time when the board was appointed tax assessors. The provisions of the code, §§ 3875 to 3883, do not authorize the commissioners to assess back taxes in any sense, and if the code stood alone and was unaided by the act of 1894, having failed to assess taxes against a railroad during the current year, it would have no power to do so for that year afterwards. The language of those sections clearly contemplates that the thing shall be done during the current year, and does not contemplate that it shall be done afterwards. Section 4 of the act of 1894 relieves this condition. It provides that, if the revenue agent discovers property belonging to any railroad or other corporation which, under the law, is required to be assessed by the state railroad assessors, he shall give the notice otherwise provided for in the act, and then authorizes the railroad assessors to make the assessment. This remedial legislation extends no further than this; it only applies to such property and such assessments as, under the law, are required to be assessed by the state railroad assessors. Its provisions are not directed to property alone, but include, as an element, that it must have been the duty of the state railroad assessors to make the assessment originally. This section confers no authority upon them to make an assessment subsequently which it was not their duty to make originally.

Counsel claimed to deduce this power from § 6 of the act of 1894, which is as follows: "The revenue agent shall have power to sue for, as herein required, delinquent taxes, or taxes that have escaped the assessor and collector, back to and including the year 1886, and no further."

They argued that, as the revenue agent was thereby empowered to have delinquent taxes, back to and including the year

1886, assessed and collected, that section authorized the railroad assessors to make the assessment. This section will bear no such construction. Instead of its being an extension of the power of either the revenue agent or any assessing board or person, it is a limitation of the power of the revenue agent, and it is intended to exclude any inference from the remainder of the statute that he may go back indefinitely. The whole scope of the legislation on the revenue agent was to restrict his power of rooting up old transactions to the year 1886 and afterwards. This section is directed to the revenue agent alone, and is the section which is intended to preserve that restriction. It is a section of restriction and limitation and not of enlargement. But there are other answers to this proposition. If this section be considered as conferring authority direct, attention must be paid to its language. That language is, that the agent shall have power to sue for and collect, and have assessed as herein required, delinquent taxes—that is to say, shall have such taxes assessed in the manner herein required, which is an express reference to the other provision of the statute, and shows that the legislature intended that the assessment should be made in the same manner, under the same restrictions, and for the same reasons as directed in other parts of the statute. It was not intended to enlarge the power of assessment, but expressly to measure it by the other requirements of the statute, which are, so far as the assessment of taxes is concerned, only such taxes as, by the law, the railroad commissioners were required to assess originally.

The supreme court has decided that a statute which, in express terms, attempted to give the power of assessment to the state revenue agent was unconstitutional. Then, how can it be possible that this statute can confer upon the revenue agent to do indirectly what he cannot do directly? If he can compel the board of railroad commissioners, who have no other authority to make such assessment, to make one, and they make it under his requirement, it is clearly his assessment and

not theirs. If it be supposed that the railroad commission had power to assess back taxes prior to 1892, this proceeding is not authorized by the statute.

By § 3 of the act of 1894, under which this proceeding is instituted and conducted, the authority given to the revenue agent is expressly limited to those cases in which he discovers that the property has escaped taxation by reason of not being assessed. That is the only condition under which he can move. Whether we have escaped taxation or not, we certainly have not escaped it by reason of not being assessed.

Our bill alleges that, in 1886, and thereafter, the L., N. O. & T. Ry. Co., then the owner of the property in question, accepted and proceeded under § 607 of the code of 1880, and the privilege law of 1884, by which it was provided that any railroad company, instead of submitting to an assessment *ad valorem*, might account for taxes on a given sum per mile. It is true the answer denies this on information and belief, but the evidence of respondents shows that the arrangement was made. The burden of proof was on the revenue agent to show nonassessment, and he has failed to meet it. Again, the arrangement of § 607, and the act of 1884, is itself a commuted legislative assessment. In that view there was a legislative assessment effected by the understanding with the auditor, and there was no escape from taxation for want of an assessment.

If we are liable for any taxes it is for unpaid privilege taxes, on the basis of seventy-five dollars per mile, to be collected by suit without any further assessment. The act of 1888 is no answer to our proposition, for the reason that it does not apply to the L., N. O. &. T. R. R. Co., because of its exemption as declared in the case of *L., N. O. & T. R. R. Co.* v. *Taylor*, 68 Miss., 361. That act, on its face, is expressly restricted to railroad companies not having exemptions. If the statute allows of the judicial investigation into the truth of the affidavits made, still that investigation cannot be made by the railroad commissioners. They are merely ministerial officers, and are not in-

vested with any judicial powers. Even the provision in the chapter on railroad supervision, to the effect that their findings of fact shall be *prima facie* evidence, has no application to this special function with which they are charged, for the reason that it is not embraced in the chapter on public revenue. They are proceeding in this respect under the code chapter on revenue and under the act of 1894, and those statutes alone. Those statutes only authorize them to assess back taxes in case the property has escaped taxation, not for want of payment of taxes assessed, but for want of assessment. The question of assessment is the only one submitted to their investigation. The property must have escaped taxation for want of an assessment, and, to a certain extent, they must look into the question of payment; because, if the taxes have been paid, the property has not escaped taxation, although there may have been a want of assessment. But this board, being a set of purely ministerial officers, and invested with no judicial functions, has no power to go behind the record. When the party who has property that is charged to have escaped taxation, produces the proper voucher for his taxes, under the law this board is concluded on that subject. Whether that tax receipt was properly issued by the functionary charged by law with its issuance is a question essentially judicial, with which they have nothing to do.

Counsel for appellee contend that § 483 of the code gives no jurisdiction to the chancery court to enjoin the assessment of taxes, but only to enjoin the collection of taxes already assessed. The code cannot be twisted to mean that, unless the phrase " or attempted to be collected " be eliminated. For the present, suppose that phrase to be omitted from the section. We submit that the statute, so constructed, would cover any and every attempt to collect an illegal tax after assessment, and that phrase would be, if the whole section is understood to mean nothing more, absolutely nugatory. It cannot be reasonably denied that the revenue agent is engaged in an attempt to col-

lect these taxes. The papers on their face show that the whole proceeding before the board is inaugurated in order to collect taxes. It is a fallacy to argue that an attempt can only begin after the levy has been made. The attempt includes the whole proceeding from start to finish.

The application to dissolve the injunction is premature outside of the final merits of this controversy. First, the answer is not sworn to on knowledge, but on information and belief; nor is it sustained by affidavits which prove its denials. The effect of the request is to dissolve this injunction on information and belief. High on Injunctions, § 1514. The dissolution of an injunction is in the discretion of the court with certain limitations. Where the ends of justice will be better subserved by retaining the injunction until the complainant has a fair opportunity to take testimony, it may be done, indulging the complainant in no unnecessary delay. *Bowen* v. *Hoskins*, 45 Miss., 183; 49 Miss., 562; High on Injunctions, § 1508. Where the dissolution will practically defeat the relief prayed for, the injunction should be continued to final hearing. *Alcorn* v. *Sadler*, 66 Miss., 221; *Supervisors* v. *Paxton*, 56 Miss., 679; High on Injunctions, §§ 1508 and 1509. The burden of proof is on respondents, and their answer should fully and fairly meet complainant's equities, and not be evasive. High on Injunctions, §§ 1470, 1475–1513. It should not be dissolved if the questions in controversy are mainly questions of law. High on Injunctions, § 1491. Nor if the questions are questions of doubt, and light is needed by the court. *Ib.*, §§ 1510–1512. Where the injunction is the principal relief prayed for, it will be retained until decision on the merits. *Ib.*, § 1512.

*Critz & Beckett* and *J. A. P. Campbell*, for appellees.

Appellant nowhere asserts or claims that the profits of the L., N. O. & T. Ry. Co. did not enable it to pay an annual dividend of eight per cent. on its capital stock. Under its charter it was not entitled to an exemption when this ability existed.

Acts of 1882, § 5, p. 1013; Acts of 1870, § 21, pp. 268, 269. It claims that the railroad commission is not authorized to assess for taxes back of its own creation in 1892, and that the revenue agent is not authorized to proceed in the manner indicated for taxes due before 1894. The act of 1894 (Acts, pp. 30, 31) expressly authorizes it. The railroad commission is an assessing body directly authorized by the constitution. The constitution of 1890 (§ 112) and code of 1892 (§ 4) expressly preserve all existing rights, and provide that the remedy shall be according to the code. The act of 1894 (§ 4) provides that the assessment shall be in the manner required by law. The manner of assessment is provided by the code of 1892, §§ 3875–3884.

The omission of taxing officers to assess property, under a misconstruction of the law, cannot deprive their successors of their power or the legislature of its right to authorize it. *Vicksburg, etc., R. R. Co.* v. *Dennis*, 116 U. S., 665. Another contention is that the revenue agent can only proceed in the manner indicated, when taxable property has escaped taxation for want of assessment, and that the L., N. O. & T. Ry. Co., having accepted the privilege tax laws, could not afterwards be assessed *ad valorem*. . The privilege tax laws, by their terms, except exempt railroads from their operation. Laws 1884, p. 31; Acts 1890, p. 13. These objections proceed on the idea that the L., N. O. & T. Ry. Co. was able to pay the dividend, and hence was liable to taxation, but that, having accepted the privilege tax laws, that was a legislative assessment, and it could not afterwards be assessed *ad valorem* as for want of assessment. The privilege tax laws were not an assessment, never did create any liability for taxes, and there was never any way or mode to collect the privilege taxes. The law provided an *ad valorem* assessment, and then fixed certain commutation values or prices at which the railroads could discharge their liability for taxes, but it was entirely optional with them whether they would do so or not, and this option could only be

exercised and consummated by accepting the privilege taxes in writing and paying the taxes on or before December 15 of each year.   Code of 1880, §§ 607 and 608; Acts 1884, §§ 1 and 2.

If the railroad accepted and did not pay, there was no way to enforce it.   To remedy this, it was provided that where any railroad had failed to pay its taxes, and so being liable to taxation, it should be assessed for and pay an *ad valorem* tax. Acts 1888, p. 49, § 1.   This was amended in 1890 by providing further, that the tax must have been paid within the time required by law.   Acts 1890, § 5.   ·

A further contention is that the filing of the affidavits required by its charter was a discharge of any liability for taxes. The charter appropriates the taxes to the construction debt, and provides that the sheriff shall give a receipt in full for the taxes, upon receiving an affidavit, made by the president or cashier, that the amount of the taxes have, in good faith, been paid and applied by the company, during the year, on the payment of the construction debt.   This is all that the affidavit is required to contain.   There is a proviso that, when the company is able to declare an annual dividend of eight per cent., the appropriation of the taxes shall cease, but this is not required to be in the affidavit.   The affidavit could be true and the company able to pay the dividend, and, instead of doing so, might put the surplus in their pockets and thus keep the construction debt alive indefinitely.   It would be monstrous to hold that the affidavit, whether true or false, was a discharge of liability for taxes, and barred an investigation into the question whether the company had in fact been able to pay the dividend or not.

A further contention is that the railroad commission has no judicial power, but is bound by the sheriff's receipt.   If that was true it would bring about a curious result.   The commission cannot assess, because it is bound by the sheriff's receipts. There is no other authority in the state that can assess railroads.   The revenue agent cannot assess, and he cannot sue for taxes until there is an assessment.   That will not do; the

sheriff cannot bind the state. *Vicksburg, etc., R. R. Co.*
v. *Dennis,* 116 U. S., 665.   The railroad commission has
power to assess for unpaid back taxes, whether it has judicial
power or not.   A court cannot be enjoined; in this case the
railroad commission itself is enjoined.   An inferior court can
be prevented by a writ of prohibition from taking cognizance
of a case of which it has no jurisdiction.   That would have
been the appropriate remedy.   There are three decisions of the
supreme court of Kentucky which settle this case against ap-
pellants as to whether the railroad commission acts judicially
or ministerially.   In the first case the court say one court
cannot enjoin the action of another.   "Relief from improper
judicial action should be sought through the channel of an ap-
peal or *certiorari* or prohibition." *Baldwin* v. *Shive,* 84 Ky.,
513.   They, however, decide that a county court, in assessing
for back taxes, acts ministerially and not judicially.   *Ib.,* 513,
514.   That case is exactly like the one at bar.   There the
county court had ordered the taxpayer to file a list of his prop-
erty.   The court held that, as the county court had merely re-
quired the list or schedule to be filed, there was nothing to be
enjoined, as the party might still set up his exemption.   *Ib.,*
515, 516.   In this case the railroad commission has simply
made an order requiring appellants to file the schedule re-
quired by the code of 1892, § 3875.   This section provides
that "if any of said property is claimed to be exempt, it shall
be separately stated, and the law cited under which it is
claimed."

It seems to us that, under our code, the railroad commis-
sion is invested with authority to decide whether a railroad is
exempt, and acts judicially.   Where an assessing board is in-
vested with power to determine whether a railroad is exempt
or not, it acts judicially and cannot be enjoined, but the rem-
edy for erroneous decision is by *certiorari,* if the statute does
not allow an appeal.   Cooley on Taxation, p. 479, note; Bur-
roughs on Taxation, p. 238, § 102; Desty on Taxation, vol. 2,

p. 625, note 2; *Ib.*, p. 637, note 10. The supreme court of Kentucky has ignored the decision in 84 Ky., *supra*, and holds that the act of the county court, in deciding whether property is liable to taxation, is judicial in these back tax cases. It refused a mandamus because the county judge, "in determining whether property should be listed for taxation or not," acts judicially. *Cassidy* v. *Young*, 92 Ky., 227. The case of *Baldwin* v. *Shive* is cited and commented on. See, also, *Louisville Water Co.* v. *Clark*, 94 Ky., 53. In this case the railroad company is required to be cited (Acts 1894, §§ 4 and 6), and when it files its schedule, "if any of said property is claimed to be exempt from taxation, it shall be separately stated, and the law cited under which the claim is made." Code 1892, § 3875. When the schedule is filed, the railroad commission "shall assess all railroads liable to taxation." Code 1892, § 3877. If this does not require the commission to decide the specific point whether the railroad is liable to taxation, it would be hard to find a case that does. Our court decided that, where the board of supervisors is invested with authority to determine a question, their decision is judicial and binding until reversed. *Investment Co.* v. *Suddoth*, 70 Miss., 423; *Anderson* v. *Ingersol*, 62 Miss., 74, 75; *Green* v. *Horne*, 52 Miss., 456. The rule is that in a chancery suit, before a party can enjoin the collection of a debt or judgment, he must show either that no debt rightfully exists or must offer to pay what is due. *Stewart* v. *Brooks*, 62 Miss., 492, and *Robertson* v. *Dean*, following it on the privilege tax and usury; *Mortgage Co.* v. *Jefferson*, 69 Miss., 770. The jurisdiction of chancery courts in reference to taxes is fixed by §§ 483 and 561 of the code of 1892, and does not involve or include an assessment. It is the policy of the state to remove impediments in the way of collecting its revenue, and to require the party to give a bond in double the amount of the taxes, so that, in the event of a dissolution of the injunction, the taxes and expenses can be speedily and promptly collected. Code 1892, § 561.

Argued orally by *Edward Mayes*, for the appellant, and by *J. A. P. Campbell* and *R. C. Beckett*, for the appellee.

COOPER, C. J., delivered the opinion of the court.

The state revenue agent gave notice to the state railroad commission, in its capacity of railroad tax assessor, that the Louisville, New Orleans & Texas railroad (a corporation formerly existing in this state, whose property and franchise is now claimed by the appellant, by virtue of a consolidation of said company with it) was delinquent for taxes due to the state, and the counties in which said road is situated, for the years 1886, 1887, 1888, 1889, 1890 and 1891, by reason of its property having escaped taxation for those years, and required said commission to proceed to assess said property for said years, as an additional assessment for taxation.    Notice was given by the commission to the appellants, as the owners of the property, who appeared before said commission, and set up many objections to further action by the commission.    The objections were overruled, and the appellants were required, on a day named by the commission, to file schedules of the property, in order that it might be assessed for taxation.    Before the day named, the appellants sought and obtained an injunction, restraining the state revenue agent and the commission from further proceeding in the assessment.    The defendants answered the bill, and moved to dissolve the injunction on bill, answer, exhibits and proof.    This motion was sustained and the injunction dissolved, and from the decree this appeal is taken.

The appellants' first contention is that "the railroad commission has no jurisdiction to assess railroad taxes back of the year 1892."    Prior to the adoption of the code of 1892, certain officers of the state were by law created as a board for the assessment of the property of the railroads in this state for taxation. Rev. code of 1880, §§ 599–608.

By the code of 1892 (§§ 3875–3886) the duty of assessing the property of railroads, telegraph, express and sleeping cars

was devolved upon the state railroad commission.    These provisions are found in the chapter on revenue, and they are in the language of prospective action—as, that the commission "shall assess," etc.    Chapter 126 of this code provided for the office of state revenue agent, whose duties and powers, *inter alia*, were to assess "any person, corporation, property, business, occupation or calling, liable to an *ad valorem* or privilege tax," which had escaped, or should escape, taxation, "by reason of not being assessed, or of not being demanded or otherwise," "and to collect and pay over the taxes thereon in like cases."

In *The State* v. *Tonella*, 70 Miss., 701, we held that so much of chapter 126 as devolved upon the revenue agent the power to make assessments was unconstitutional.    That case was decided at the March term of 1893 of this court.    By an act approved February 7, 1894 (Acts of 1894, p. 29) the legislature amended chapter 126 of the code.    Under this act, the agent, if he discovers that persons or property have escaped taxation in former years, is directed to give notice to the proper authorities, who are then required, upon due notice and examination, to assess such persons or property, if of right it should be done.    Section 4 of this act provides that "if the property which the revenue agent discovers to have escaped taxation, shall belong to any railroad or other corporation which, under the law, is required to be assessed by the state railroad assessors, the revenue agent shall give the notice required herein to said railroad assessors, and they shall give the required notice to the company or corporation.    At their next meeting, after giving the proper notice, said property shall be assessed in the same manner required by law, and placed on the proper county, municipal or levee board roll, and collected by the proper officers in the manner required by law."    The contention of counsel for appellants is this: The duty of assessing taxes was first devolved upon the railroad commission by the code of 1892.    The language of the code chapter on revenue, in which this duty is devolved, relates only to the

future.    The act of 1894 authorizes the revenue agent to give
notice to the railroad assessors only as to property which the
railroad assessors are required by law—viz., by the code of
1892—to assess; and since the revenue chapter of that code only
devolved upon the railroad assessors the duty or power to as-
sess property for purposes of future taxation—*i. e.*, taxation
for years subsequent to the year 1892—they have no power to
assess property which has escaped taxation for any year prior
to that of 1892.    The insuperable obstacle to this construction
of the statutes is that we are confronted at every step by a
manifest contrary legislative purpose.    The whole scheme looks
to the subjection now of all property which, since the year
1886, ought to have been taxed, but which, for any reason,
has escaped taxation.    The legislature did not overlook the
fact that the power of assessing the property of certain cor-
porations is now conferred upon the railroad commission, and
that the county authorities have no power so to act.    By § 4 of
the act of 1894, the revenue agent is directed to make report
to the commission of the property of such corporations discov-
ered by him "to have escaped taxation," and the commission
is thereupon directed to give the notices required by law, and
to assess such property.    Authority to do an act is necessarily
implied from the direction to do it.    Nor does the act of 1894
leave any doubt for what precedent years the property was to
be assessed.    By § 6 it is declared that the "revenue agent
shall have power to sue for, collect and have assessed as herein
required, delinquent taxes or taxes that have escaped the
assessor and collector, back to and including the year 1886,
and no further."    It is true this section is in part a limitation
upon the exercise of the power conferred by the act, in that
the revenue agent is not permitted to go behind the year 1886.
But it also shows that the legislative purpose was that prop-
erty of all description which had escaped taxation for any
year from 1886, inclusive, should be subjected to taxation
under the act.    The section expressly says that the agent, as to

such years, "shall have power to sue for, collect and have assessed as herein required," etc.

If the matters involved are committed by law to the jurisdiction of the commission, the next question for consideration is whether at this stage of the proceeding a court of equity should interfere by injunction to restrain action upon any state of facts alleged by the owner of the property, going only to show that in the particular case no assessment ought to be made.

By providing for notice to the owner, and thus affording to him the opportunity of interposing his objections to the assessment of the property, the determination of all questions of fact necessarily involved in the inquiry is submitted by law to the tribunal having jurisdiction in the premises. The question of the force and effect of an adjudication by the commission is not involved, nor can it be properly decided in this cause. The single inquiry is whether a court of chancery should, by virtue of its general or statutory jurisdiction, draw to itself and from the commission the decision of such facts. We have statutes upon the subject of enjoining the collection of taxes, which, in our opinion, exclude a resort to equity under the circumstances existing in this cause.

By § 483 of the code it is provided that "the chancery court shall have jurisdiction of suits by one or more taxpayers in any county, city, town or village, to restrain the collection of any taxes levied, or attempted to be collected, without authority of law."

Section 484 provides that "upon the dissolution of any such injunction, the chancellor or court ordering it dissolved shall enter a decree against the person suing out the same and the sureties on his injunction bond, for the amount of taxes so enjoined and ten per centum thereon, and all costs of suit," etc.

Section 561 declares that "an injunction shall not be granted to stay the collection of state, county, city, town or village taxes, unless upon condition that, before its issuance, the party obtaining it shall enter into bond, payable to the state, with two

or more sufficient sureties, to be approved as in case of other injunctions, in a penalty at least equal to double the amount of taxes sought to be enjoined, conditioned for the prompt payment of the taxes enjoined, and damages and costs in case the injunction shall be dissolved.''

Whatever may be the class of cases in which a court of chancery will intervene by injunction, in the absence of a statute, to enjoin the collection of taxes, it has always been exercised with great caution, and on the ground that irreparable injury would flow from its refusal to interfere; irreparable, of course, in the sense that no adequate remedy for the prevention of the injury or its reparation was within reach of the party otherwise than by injunction. But our statute opens the door, and permits a recourse to equity whenever the tax '' levied or sought to be collected '' is without authority of law.

But the rights of the state and of its municipalities is preserved by requiring, as a condition precedent to the remedy by injunction, that a bond with sufficient sureties, and in a sufficient penalty to insure the prompt payment of. whatever may be found to be legally due, shall be executed. The manifest scheme is that if one goes into equity to challenge the legality of a tax, he shall finally settle all that is justly due, and shall give security that he will do so.

The contention of counsel that an injunction is allowable, under the statute, against a proceeding to assess property, because it is '' an attempt to collect '' them within the meaning of § 483 of the code, cannot be maintained. In this state we have several sorts of taxes: (1) An *ad valorem* tax, as to which an assessment of the property on which it is imposed is essential, (2) privilege taxes imposed by statute upon occupations, (3) an acreage tax charged by law upon the lands in the levee districts, without regard to value. The amount of occupation and acreage taxes being fixed by the statute, a court of chancery decreeing the dissolution of an injunction could, by a mere computation, determine for what sum its decree should be made, and

the amount sought to be collected would measure the penalty of the bond required by the statute. But where the tax "levied or sought to be collected" is an *ad valorem* tax, unless an assessment of the property sought to be charged is first made, the penalty of the bond cannot be fixed, nor can the court, on dissolution of the injunction, render a decree for the amount of taxes legally due, for what taxes would be due would be determinable only upon an assessment of the property, and a chancery court has neither the machinery nor the power to make such assessment.

Without expressing any views upon the merits of the controversy sought to be drawn into the chancery court, we are of opinion that the injunction was properly dissolved, and the decree is

*Affirmed.*