YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY ET AL. v.
WIRT ADAMS, STATE REVENUE AGENT.

1. REMOVAL TO FEDERAL COURT. *Back taxes. State laws. Inferable defenses.*
   A suit in equity seeking to subject property to state taxes under state laws is not removable to the federal court on the ground that federal questions are involved, although it may be inferable from the bill of complaint that defences involving federal questions may be made by defendant.

2. RAILROAD COMMISSION. *Jurisdiction. Taxation. Exemption. Res adjudicata. Constitution 1890, sec. 112. Code 1892, ?? 3678, 3875, 3876, 3877.*
   The railroad commission, as assessor of railroad property, is without power to determine questions of exemption from taxation so as to render them *res adjudicata.* [Constitution 1890, sec. 112; code 1892, ?? 3678, 3875, 3876, 3877 considered.]

3. SUPREME COURT. *Appellate jurisdiction. Affirmance. Correct judgment, based in court below on wrong grounds. Constitution 1890, Sec. 146; Code 1892, ?? 4350, 4353.*
   When the court of original jurisdiction rendered a judgment on the merits of a case based on certain legal principles, especially declining to pass on other questions on which the same judgment might have been based, the supreme court may affirm the judgment on the questions not passed upon by the lower court. [Constitution 1890, sec. 146, code 1892, ?? 4350, 4353, considered.]

4. SAME. *Appellee not confined to errors assigned.*
   An appellee may show from the record that the judgment appealed from is correct and should be affirmed, and in so doing is not restricted to an examination of the errors assigned by the appellant.

5. CHANCERY PLEADINGS. *Replication. Code 1892, ? 540.*
   Under code 1892, ? 540, dispensing with a replication to an answer in chancery, where a bill of complaints ought to have certain railroad property subjected to the payment of back taxes and the answers thereto averred that the railroad was constructed by a company having a charter which gave exemption from the taxes, the pleadings, without a replication, presented an issue as to what company constructed the road.

6. BACK TAXES. *Prior suit. Res adjudicata. Stare decisis.*
Questions involved in a suit to subject property for the back taxes of certain years are not *res adjudicata*, although determined in a previous suit between the same parties to subject the same property to the taxes of other years; the previous litigation only invites the application of the doctrine of *stare decisis*.

7. CONSTITUTIONAL LAW. *Constitution 1869, Art. 12, Sec. 13. Corporations. Exemptions from taxation. Laws 1871, p. 237; 1873, p. 562; 1882, p. 1011; 1884, p. 936.*
Under constitution 1869, art. 12, sec. 13, providing that "the property of all corporations, for pecuniary profit, shall be subject to taxation, the same as that of individuals," the provisions of a charter of a railroad company, passed while said section of the constitution was in force, which assumed to grant to the company the right to use the taxes on its property for a number of years in the payment of its debts contracted in the construction of its road unless eight per centum dividends on its capital stock were earned, is unconstitutional. [Laws 1871, p. 237; laws 1873, p. 562; laws 1882, p. 1011; laws 1884, p. 936, considered.]

8. BACK TAXES. *Liability of property. Purchaser. Estoppel. Erroneous decisions.*
Railroad property which has escaped taxation because of a mistake as to the constitutionality of certain charter provisions assuming to exempt it from taxation is liable for back taxes, although it was purchased by the present owner after the default in the payment and before the passage of the law authorizing suits for back taxes, unless the state be estopped from enforcing the liability; but the state is not estopped by erroneous decisions of its highest judicial tribunal holding the charter provisions valid which were rendered after the purchase of the property by the present owner.

9. RAILROADS. *Constructed by two companies. Charter exemption from taxation.*
Where a railroad is constructed by parties controlling two companies having two charters, only one of which contains an exemption from taxation, and in the progress of the work the accounts of the two companies were inextricably confused, it cannot be adjudged that the road was constructed under the charter containing the exemption, so as to give a new corporation, formed by consolidating the two companies a right to claim the road as exempt from taxation.

10. SAME. *Consolidation of companies. Road previously constructed.*
    *Laws* 1882, *p.* 1011; *laws* 1884, *p.* 936.

    An exemption from taxation as to the road at the time already constructed, did not become vested in the company arising from the consolidation of the two railroad companies authorized to consolidate by the laws of 1882, p. 1011; as amended by the law of 1884, p. 936.

11. TAXATION. *Exemption. Burden of proof.*

    The burden of proof is on the party claiming an exemption from taxation to show that all the conditions upon which the exemption is based have been fulfiled at all times.

12. RAILROADS. *Taxation. Laws* 1870, *p.* 268; *laws* 1875, *p.* 66; *laws* 1878, *p.* 78. *Code* 1880, §§ 597, 608. *Laws* 1882, *p.* 1011.

    Laws 1870, p. 268, is a provision in the charter of a certain railroad company whereby it was allowed to appropriate its taxes to the payment of debts to be incurred in the construction of its road. Laws 1875, p. 66, in relation to the collection of a privilege tax from railroads, provided that all other acts under which railroad taxes might be collected in a different way were thereby repealed. Laws 1878, p. 78, increasing the amount of the privilege tax, made a special exception of another road than the one in question. Code 1880, §§ 597–608, provide that all railroads shall be subject to taxation, except the very portions in process of construction. Laws 1882, p. 1011, authorizing the consolidation of the road in question with other roads, provided that the new company should have all the "rights, grants, and immunities now enjoyed by such companies." *Held*, that, the immunity from taxation having been repealed, no right was acquired by the new company.

13. SAME. *Statutory construction. Recognition of exemption from taxation. Laws* 1884, *pp.* 29–31; *laws* 1888, *p.* 49; *laws* 1890, *p.* 13.

    Statutory recognitions of the exemption of railroads from taxation, contained in charters previously passed, and legislative declarations of intent that general taxation laws should not interfere therewith, do not create exemptions or give sanction to non-existent exemptions. [Laws 1884, pp. 29–31; laws 1888, p. 49, and laws 1900, p. 13, considered.]

14. SAME. *Repeal. Code* 1880, §§ 597–608. *Laws* 1878, *p.* 233.

    Code 1880, §§ 597–608, providing that all railroads shall be subject to taxation, except parts in process of construction, repealed laws 1878, p. 233, in so far as it undertook to give the railroad company permission to appropriate taxes for a number of years to the payment of its debts incurred in the construction of the road.

---

Opinion of the court.

---

FROM the chancery court of, first district, Hinds county.

HON. HENRY C. CONN, Chancellor.

Wirt Adams, state revenue agent, appellee was the complainant in the court below; the Yazoo & Mississippi Valley Railroad Company and the Illinois Central Railroad Company appellants, were defendants there. From a decree in complainant's favor defendants appealed to the supreme court. The facts are stated in the opinion of the court.

For previous cases between the parties relative to back taxes and questions arising thereon, see *Yazoo, etc., R. R. Co.* v. *Adams,* 73 Miss., 648; *Adams* v. *Yazoo, etc., R. R. Co.,* 75 Miss., 275; *Yazoo, etc., R. R. Co.* v. *Adams,* 76 Miss., 545; *Adams* v. *Yazoo, etc., R. R. Co.,* 77 Miss., 194; *Adams* v. *Yazoo, etc., R. R. Co.,* 77 Miss., 764; *Yazoo, etc., R. R. Co.* v. *Adams,* 77 Miss., 780; *Illinois, etc., R. R. Co.* v. *Adams,* 78 Miss., 895; *Yazoo, etc., R. R. Co.* v. *Adams,* 78 Miss., 977; *Illinois, etc., R. R. Co.* v. *Adams,* 93 Fed., 852 (s.c., 35 C. C. A., 635); *Yazoo, etc., R. R. Co.* v. *Adams,* 180 U. S., 1; *Yazoo, etc., R. R. Co.* v. *Adams,* 180 U. S., 26; *Yazoo, etc., R. R. Co.* v. *Adams,* 180 U. S., 41; *Illinois, etc., R. R. Co.* v. *Adams,* 180 U. S., 28; *Yazoo, etc., R. R. Co.* v. *Adams,* 181 U. S., 580.

*Mayes & Harris* and *J. M. Dickinson,* for appellant.

*Critz & Beckett, Green & Green,* and *J. A. P. Campbell,* for appellee.

Argued orally by *Edward Mayes,* for appellant, and by *J. A. P. Campbell, Marcellus Green, R. C. Beckett,* and *Frank A. Critz,* for appellee.

CAYCE, Sp. J., delivered the opinion of the court.[*]

This suit was brought by appellee against the railroad property formerly owned by the Louisville, New Orleans & Texas Railroad Company, including the Natchez, Jackson & Colum-

---

[*]Calhoon, J., having been of counsel in this case before his appointment to the bench, recused himself, and Newman Cayce, Esq., a member of the supreme court bar, was appointed special judge in his place and presided as such in the cause.

bus Railroad Company, for the ad valorem taxes claimed to be due thereon for the years 1886 to 1891, inclusive, and to enforce a lien therefor on the part of the line of said railroad extending from the Louisiana state line, on the south, to the Tennessee state line, on the north, a distance of about 315 miles, and upon the branches of said road—one known as the Tallahatchie Branch, about the distance of 39 miles, and a part of the branch known as the Riverside Division, or Loop, a distance of about 86 miles. The suit is brought under the act of 1894 (Laws, 1894, p. 29), authorizing the revenue agent to sue for and recover back taxes. It is a proceeding wholly *in rem,* no personal judgment being sought. The suit against that part of the line above mentioned was numbered, originally, No. 1,449. This suit includes a similar claim for ad valorem back taxes for same period on the property known as the Natchez, Jackson & Columbus Railroad; the last-named road having been purchased by the Louisville, New Orleans & Texas Railroad Company in the year 1890. This suit was numbered, originally, No. 1,681. The two suits were consolidated in the lower court, to facilitate trial, each party reserving the right to interpose any and all defenses or claims as if no consolidation had occurred. Judgment was rendered in the lower court for appellee for the amount claimed, and the property mentioned subjected to the payment of said judgment. Appeal was taken therefrom to this court, and appellants assign errors as follows: That the court below erred: "(1) In not granting application to remove case No. 1,681 (original) to the federal court. (2) That the property was not liable to be assessed for back taxes, as claimed, because the ad valorem taxes for said years, pursuant to law, were authorized to be paid by a privilege tax in lieu thereof, rated at a specified sum per mile of said road, and that said privilege tax was paid, pursuant to law, by the appropriation of the amount of each year's taxes on said line of road to the debt incurred in the construction of said road, pursuant to the provisions of sec. 21 of the Mobile & Northwestern Railroad

Company charter (Laws, 1870, p. 268), which said sec. 21 was incorporated in the charters of the companies [railroads] constructing said road; said roads being afterwards consolidated into the Louisville, New Orleans & Texas Railroad Company, and said sec. 21 being also incorporated into the act of the legislature authorizing said consolidation; said railroads not having been able to pay out of their earnings the dividend of 8 per cent as provided in said sec. 21.   (3) That the Illinois Central Railroad Company was a *bona fide* purchaser of said property for a valuable consideration, without notice of any taxes being due or claimed upon said property.   (4) That the state was estopped in this case from claiming said sec. 21, and the acts of the legislature amendatory thereof, to be in violation of the constitution of 1869 of Mississippi." Appellants also insist that this court has no power to examine and determine questions of fact appearing in the record, but which were not considered and acted upon by the lower court.   To these defenses appellee interposes the following objections: "(1) That these defenses were interposed by appellants before the railroad assessors at the time of the assessment under which this suit was instituted was being considered by them, and was considered by said railroad assessors, and by them adjudged against appellants, and by reason thereof became *res adjudicata;* that the order of the railroad assessors making the assessment was conclusive, and not subject to collateral attack.   (2) That the same defenses had been interposed in previous suits in the supreme court of this state between the parties hereto, and had been in said suits adjudged against appellants, and by reason thereof become and were *res adjudicata* of the legal questions involved, and, if not *res adjudicata,* were conclusive against appellants under the rule of *stare decisis.*   (3) That sec. 21 of the Mobile & Northwestern Railroad Company, and the acts of the legislature amendatory thereof, had been repealed by subsequent acts of the legislature and by the code of 1880, and that the attempted exemption or appropriation of taxes by said sec. 21 was

.in violation of the constitution of 1869, and void *ab initio*. (4) That the railroad was constructed by a railroad company whose charter contained no exemption or appropriation of taxes, and that the construction of the branch roads by the Louisville, New Orleans & Texas road did not entitle them to claim exemption of said branches from taxation. (5) That the roads had been able to pay out of their earnings a dividend of 8 per cent upon their capital stock, over and above their proper debts and liabilities, and for that reason were not entitled to claim exemption from taxation."

In the scope of the investigation necessary for the proper comprehension and application of the legal principles involved, we are much indebted to counsel for the industry and ability and the thoroughness with which they have presented the various questions to us, leaving the court but little to do, save collate and apply the principles invited by the facts.

The portion of the railroad line upon which the taxes are claimed extends from the Louisiana state line, on the south, to the Tennessee state line, upon the north, passing through portions of the counties of Amite, Franklin, Jefferson, Claiborne, and Warren, south of Vicksburg, a distance of about 101 miles; thence northward, through portions of the counties of Warren, Issaquena, Sharkey, Washington, Bolivar, Coahoma, Tunica, and De Soto, a distance of about 214 miles; aggregating upon the main line a distance of 315 miles in Mississippi; and also upon a part of the Riverside Division, extending from Wilzinski to Coahoma station, on the north, and from Hampton to Rolling-fork on the south—an aggregate distance of about 86 miles on the Loop, or Riverside Division, and also upon the Tallahatchie Branch, extending from Clarksdale to Minter City, a distance of about 39 miles. In March, 1895, the revenue agent filed notice with the railroad commissioners, who by the law are railroad assessors, that the property above described had escaped taxation by reason of not having been assessed for the years 1886 to 1901, inclusive, and named the Yazoo & Mississippi

Valley Railroad Company and the Illinois Central Railroad Company as owners. In April, 1895, the revenue agent filed with said commissioners additional notice, with interrogatories for said owners to answer as follows: "(1) When the main line, Riverside Division, and Tallahatchie Branch were constructed. (2) The cost of construction, amount of donations, amount of stock, amount paid for same, and the earnings, gross and net; the nature and character of affidavits filed, and of the receipts obtained from the sheriffs." Order was made by the railroad commissioners, requiring the appellants to answer. Appellants answered by averring that the railroad assessors had no authority to assess the taxes for the years named; that the commutation law had been accepted for said years, and therefore *ad valorem* taxes were not necessary to be assessed, and hence the land had not escaped taxation. The objections of appellants to the making of assessments were overruled by the commissioners, and schedules of the property, as required by law, were ordered to be filed by appellants with the commissioners by the first Monday of August, 1895. Appellants declined to answer the interrogatories, and the matters were set for hearing on the first Monday of September, 1895. On the 27th of August, 1895, appellants filed a bill and obtained an injunction against the railroad commissioners and revenue agent to prevent the assessment of said property. On September 28, 1895, the injunction was dissolved. Appeal was taken to the supreme court, and on December 2, 1895, the decree dissolving the injunction was affirmed. Case No. 8,312, reported in 73 Miss., 648; 19 So., 91. On February 5, 1896, the railroad assessors made an order assessing said property. The assessment remained on file thirty days, open to objections. No objections being filed, the order making the assessment was confirmed by the assessors on March 17, 1896. The appellants appealed from the order making the assessments by the railroad commissioners to the circuit court of Hinds county, Miss., and this appeal was dismissed by the circuit court for lack of jurisdiction. No appeal from the

action of the circuit court in dismissing said appeal was taken. On November 19, 1896, the revenue agent filed the bill herein, original No. 1,449. To this bill the Yazoo & Mississippi Valley Railroad Company filed two pleas. One of them (being the pendency of the appeal in the circuit court) was subsequentlv withdrawn, and not considered. One averred the provisions of §§ 3875 to 3886, inclusive, of code, 1892, to be unconstitutional and void, and the act of 1894 authorizing assessments for back taxes, and suits to be instituted thereon, to be unconstitutional and void. The Illinois Central Railroad Company demurred, assigning as causes that the bill showed no liability on them, nor any reason for making them defendants; that the act of 1894, authorizing assessments for back taxes, was unconstitutional and void, because in violation of sec. 14 and sec. 112 of the constitution of Mississippi (1890), and in violation of the fourteenth amendment of the constitution of the United States. The plea was holden insufficient, and the demurrer overruled. Appeal was taken to the supreme court, and the decree of the lower court affirmed. Reported in 77 Miss., 764; 25 So., 355. In 1898 the revenue agent gave notice to the railroad commissioners that the Natchez, Jackson & Columbus Railroad Company had escaped taxation for lack of assessment for the years 1886 to 1891, inclusive, and named the Yazoo & Mississippi Railroad Company and the Illinois Central Railroad Company as owners. Notices were given to the alleged owners as required by law, and on August 1, 1898, assessment was made of the property of the Natchez, Jackson & Columbus Railroad Company; the assessment to remain on file for objections. No objections were filed, but on August 4, 1898, the Illinois Central Railroad Company filed a bill in, and obtained an injunction from, the United States circuit court, restraining the commissioners from certifying the assessment to the counties, and the revenue agent from suing on the assessment. On February 7, 1899, the restraining order was discharged, and an appeal taken to the United States circuit

court of appeals, which appeal was dismissed for lack of jurisdiction on April 25, 1899. On April 26, 1899, the revenue agent filed his bill herein, numbered 1,681, originally, seeking to subject the property of the Natchez, Jackson & Columbus Railroad to the taxes under said assessment. On May 1, 1899, the United States circuit court dismissed the bill of the railroad company, and an appeal was taken therefrom to the United States supreme court. On January 7, 1901, the United States supreme court reversed the decree of the United States circuit court, and remanded the case. 80 U. S., 1; 21 Sup. Ct., 251; L. Ed., 410. This reversal of the decree dismissing the bill occurred on a point of pleading, and did not touch the merits of the bill. On April 29, 1899, the defendants in the lower court (appellants) filed petition asking removal of cause numbered 1,681 (original) to the federal court, and gave bond for such removal. On May 8, 1899, the court below refused to grant petition for removal, and defendants excepted. On May 8, 1899, by agreement, the two cases, numbered, respectively, 1,449 and 1,681, were consolidated; it being agreed that such consolidation was only to facilitate the trial and save costs; both parties reserving all rights of claim or defense applicable to either. At the January term, 1900, the consolidated cause was submitted for hearing on bills, answer, exhibits, proofs, pleadings, and record, and decree rendered subjecting the property named in each suit to the taxes of 1886 to 1891, inclusive. From this decree, appeal was taken to this court.

The right to remove causes from the state to the federal court only exists where there is contained in the plaintiff's cause of action, as stated, a case arising under the constitution or laws of the United States. Otherwise the federal court has no jurisdiction. It is of no avail that the statement of a case involving a federal question arises out of the pleadings of the defendant, or is stated suggestively by the complainant in his bill. There is no difference in the application of this restrictive condition, whether the jurisdiction be invoked originally in the federal

court, or upon an application to remove from the state court. In the case of *State of Tennessee* v. *Bank of Commerce,* 152 U. S., 454 (14 Sup. Ct., 654; 38 L. Ed., 511), the court says: "In the first and second bills the only reference to the constitution or laws of the United States is the suggestion that the defendant will contend that the law of the state under which the plaintiffs claim is void because in contravention of the constitution of the United States, and by the settled law of this court, as appears from the decisions above cited, a suggestion by one party that the other will or may set up a claim under the constitution or laws of the United States does not make the case one arising under the constitution of those laws. The only right claimed by the plaintiffs is under the law of the state of Tennessee, and they assert no right whatever under the constitution and laws of the United States. Under the act of August 13, 1888, ch. 866, the circuit court of the United States has no jurisdiction, either original or by removal from a state court, of a suit as one arising under the constitution, laws, or treaties of the United States, unless that appears by the plaintiff's statement of his own claim." In the case at bar the complainant's cause of action is asserted solely under the laws of the state of Mississippi. After completing the statement of his claim under the laws of the state, the complainant suggestively states the defenses interposed by the defendants when the application to have the property assessed was pending before the railroad commissioners. Conceding that these defenses involved a federal question, yet they are not a part of the statement of complainant's claim. This claim was complete in statement, without reference to the defenses which had been or might be interposed by defendants. There was no error in overruling the application to remove.

The force and effect of the decision of the railroad commissioners in determining the liability of the property to taxation and assessing it is determinable in this collateral attack by the jurisdiction of the railroad commissioners, acting as railroad

assessors.    The office, duties, and powers of the railroad assessors are wholly legislative, and are found in §§ 3875 to 3886, inclusive, of the code of 1892.    Railroad assessors is not an office established under authority of sec. 172, constitution of Mississippi, 1890; but it was created under and pursuant to sec. 112, constitution of Mississippi, 1890, which section, after declaring general rules for assessment of property, provides: "But the legislature may provide for a special mode of valuation and assessment for railroads and railroad and other corporate property. . . . But all such shall be assessed at its true value."    Pursuant to this constitutional authorization to provide a "special mode for valuation and assessment of railroads and railroad and other corporate property," §§ 3875 to 3886, inclusive, code 1892, were enacted.    Looking to these sections for the jurisdiction of the railroad assessors, it is found that the legislature kept within the constitutional limitations in conferring power upon them, and that power is to assess and value, and is found in §§ 3877, 3878, *supra.*    Section 3878 reads as follows: "The members of the railroad commission are constituted state railroad assessors, and they shall, upon the receipt or making and completion of the schedules, provided for in the last two sections, assess all railroads, telegraph, sleeping car, and express company property liable to taxation in the state, affixing its true value, so that such property shall bear its just proportion of taxation, taking into consideration the value of the franchise, and the capital stock engaged in the business in this state; and the railroad assessors may adopt other and further rules, necessary and proper to ascertain the value of property to be assessed by them, including the amount of capital engaged in the business in this state."    Section 3878 says: "If in any case the railroad assessors have reason to believe that any railroad company, or person owning or operating a railroad, has rendered a false or fraudulent schedule, and that an assessment predicated thereon will relieve such company or person of a just share of taxation,

they shall not, in making the assessment, be bound thereby, but they shall make out a proper schedule, as if none had been rendered, first giving such person or company five days' notice to come forward at a time and place to be named, and show cause why such course should not be pursued. Such notice shall be served and returned as a summons from court." These sections are a part of the general revenue law, and confer upon the railroad assessors the duty and powers, as to railroad and other corporate property, that by the general law are conferred upon the tax assessors and boards of supervisors together as to all other species of property. The same duties are to be performed, the same results to be ascertained. In each case the property is to be assessed, and its true value affixed. It is urged by the appellee that the railroad assessors had jurisdiction to determine the liability of railroads to taxation, and, in the exercise of such power, to determine the existence and the constitutionality of any claim of exemption from taxation appearing in the schedules filed, or otherwise presented to them. This contention is based upon this language near the conclusion of § 3875, *supra,* viz.: "And if any of such property is claimed to be exempt from taxation, it shall be separately stated, and the law cited under which the claim is made." And upon this language in § 3877, *supra,* viz.: "That the railroad assessors shall, upon the receipt, or making and completing of the schedules, provided for in the last two sections, assess all railroads . . . . liable to taxation." Section 3875, *supra,* provides for filing of schedules, and specifically enumerates the various items of information required to appear therein; but it does not, in terms, purpose, or effect, purport to confer or define jurisdiction. The non-compliance of the railroad with the requirement of filing schedules in no way affects the power or duties of the railroad assessors. In § 3876, *supra,* this provision for such failure to comply exists: "In case of failure, neglect, or refusal, the commissioners shall make out such schedule from the best information obtainable."

The determination of questions of exemption from taxation, involving the constitutional authorization of the legislature, and of the legislative acts thereunder, pertains to the highest and most important exercise of the judicial functions. The power to exercise these important duties must not rest upon inference. It must be presumed that the legislature would not have intended to confer this power upon the railroad assessors without expressing such intent in clear, unmistakable language; and it must also be presumed that the legislature, in enacting the statute under consideration, intended to enact a law within and to the extent only of the authority conferred upon them in that behalf by sec. 112 of the constitution of Mississippi, *supra,* which authority was "to provide a special mode of valuation and assessment of railroads, . . . . all such property to be assessed at its true value." There is. nothing in this language of the constitution indicating any purpose to authorize the legislature to confer any jurisdiction upon the parties or party selected to perform this duty, except such as was necessary to assess and value a certain species of property in the same manner and to the same extent that the officers provided by the constitution, viz., tax assessors and boards of supervisors, should assess and value all other species of property. In both cases the same purposes were to be subserved. There is no special significance to be attached to the words, "liable to taxation," in this connection. The same words, in the same revenue law, and referring to the duties of the tax assessor and to those of the boards of supervisors, are used and mean the same in each place. It is only a general term used to distinguish the property to be assessed, as separating it from other property not liable to taxation, whether exempt therefrom by general law or otherwise. The law determines what property is liable to assessment. Its liability under the law is not affected by the act of assessment. Section 3754, code 1892, provides that the "assessors shall assess the polls, and all personal property subject to taxation, and shall set down in the assessment rolls . . .

each item of personal property liable to taxation." Sections 3772, 3773, *Id.,* authorize the assessor to assess lands not returned or rendered to him, and the value fixed, as in other cases. Section 3774, *Id.,* provides how the land rolls shall be made up, and says: ". . . . Land of the United States and other land exempt from taxation shall be set down in separate columns." Section 3788, *Id.,* says: "The boards of supervisors of each county shall hold a meeting at the courthouse on the first Monday of August to hear objections to assessment and examine same, . . . . and shall determine all exceptions thereto." The manner of assessment of all property, and the powers and duties of all officers charged with the assessment and valuation of property, are one harmonious scheme, with no distinction as to the sphere of duty or extent of the powers of the officers in its performance. The railroad assessors, in making assessments and in hearing and determining objections thereto, are exercising the same duties, and their judgments in such case are entitled to the same consideration, and have the same degree of conclusiveness, which pertain to the judgments of boards of supervisors in the discharge of their duties of like nature. Their judgments are conclusive "regarding assessments only, as to irregularities, and matters of fact resting wholly in *pais,* but not final as to question of exemption, under either statutory or constitutional provisions." See *Horne* v. *Green,* 52 Miss., 456; *City of Meridian* v. *Phillips,* 65 Miss., 364; 4 So., 119; *Same* v. *Ragsdale,* 67 Miss., 86; 6 So., 619; *Ball* v. *City of Meridian,* 67 Miss., 93; 6 So., 645. The board of railroad assessors did not have jurisdiction to determine the claim of exemption interposed, and therefore the facts which would be involved in the determination of such exemption (its existence, its being earned, discharged, or terminated) have not been concluded by their finding. Their judgment touching the claim of exemption is void because they were without jurisdiction, as regards it, and to that extent may be attacked collaterally. The court below erred in holding the judgment

of the railroad assessors *res adjudicata* as to the exemption claimed. As to all other matters involved in the assessment and valuation of the property, the judgment of the railroad assessors was conclusive.

The decree of the lower court recites that certain legal questions (stating them specifically) entitle the appellee to the relief prayed, and as "to all other issues in the case, deeming them unnecessary and immaterial, declines to consider them." Among the issues presented by the pleadings, and declined to be considered by the court below, are the issues of fact as to who built the road, under what charter it was constructed, and when constructed, and also whether or not the road could have paid a dividend of 8 per cent on its capital stock out of its earnings remaining after payment of its debts and liabilities during the years for which the taxes are claimed. We are asked by the appellee to consider and determine those facts, and the evidence pertaining thereto which appears in the record, but was declined to be considered by the court below, such declination appearing affirmatively in the decree of the lower court. Appellants object to such evidence being considered by this court, insisting that this court, having only appellate jurisdiction, cannot examine or determine matters of fact shown by the record, affirmatively, to have not been acted upon by the lower court; that such action by this court would be an exercise of original, not appellate, jurisdiction; that this court should restrict its revision to the judgment of the lower court, considered in connection with those matters alone shown by the record to have been the basis of the judgment.

The interesting and important question presented by this contention has not heretofore been considered by this court, in the exact aspect as now presented. It appears from the recitals of the decree of the lower court that the cause was heard upon "bills, answer, exhibits, proofs, pleadings, and record." The whole case was submitted for hearing, and was therefore sub-

ject to be considered. ·Ordinarily, the presumption would at-tach that the case, as a whole, was considered, examined, and acted upon by the lower court, and would be clearly governed by the rules frequently applied by this court, holding that "the appeal brings up the whole case, and presents the question whether the decree is right, in whole or in part, upon the entire record;" but it is very ably and forcibly argued by counsel for appellants that as it affirmatively appears by the record in this case that the issues of fact, and the evidence taken and sub-mitted on those issues, were not considered or acted upon by the lower court in rendering the decree, no presumption of action by the lower court can be taken, and therefore any considera-tion and action by this court upon such issues would be primary and original, and not appellate.

Section 146, constitution of Mississippi, 1890, confers and defines the jurisdiction of this court, which is "such jurisdiction as properly belongs to a court of appeals." This language ex-cludes the grant of original jurisdiction. *"Unius expressio est alterius exclusio,"* except as the exercise of jurisdiction *quasi* · original may properly be necessary to the effectual exercise of its appellate powers. In recognition of the probable necessity of the exercise of this implied addition to the power expressly given, the legislature enacted § 4350, code 1892, which pro-vides that "the supreme court may try and determine all issues of fact which may arise out of any appeal before it, and be necessary to· the disposition thereof." This question, in its decision, involves both the power and the practice of this court. The power is conferred alone by the constitution. The prac-tice may be regulated by legislative enactment, within the limits of the power. Where the judgment of the lower court rests solely upon the question of jurisdiction, and there has been no judgment upon the merits, then in such case the only matter presented for revision by this court would be the action of the lower court upon the question of its power to try. There would not have been any trial of the cause upon its merits, either as

to the law or the facts. The case of *McDonald* v. *Smalley,* 1 Pet., 620; 7 L. Ed., 287, referred to by counsel for appellants, is a type of this class of cases, as appears from the report of the case: "The court, being advised upon the subject, directed the counsel to argue the point of jurisdiction only, as no other than that had been decided in the court from which the appeal had been taken." An appellate court reviews and revises the judgment of the lower court. If that judgment be only upon the jurisdiction, then that is the only question to be reviewed. If the judgment of the lower court be upon the merits, or upon both the question of jurisdiction and of the merits, then that judgment, in its entirety, is to be reviewed and revised by the appellate court. In the case at bar it appears from the record that the cause was submitted and heard upon the "bills, answer, exhibits, pleadings, evidence, and record," and the judgment of the lower court is that the property is liable to the payment of the taxes claimed, and subjects the property to their payment. It is this judgment that is before us for review. The whole record is before us, and its correctness is the question for our examination. We have no law or rule of practice requiring the trial judge to specify the reasons, nor to segregate the issues he deems material, in rendering his judgment. A judgment upon the merits is based upon the whole case as presented, and is and must be viewed as a entirety. A case may have any number of issues, but a final judgment disposes of the whole case, and of necessity includes in such disposition all issues therein. This legal result cannot be affected or avoided by the recitation in the judgment in the lower court that certain issues were deemed material and decisive, and that other issues were deemed by him to be immaterial and irrelevant, and therefore he did not consider or decide them. The issues presented questions of law and facts. The decree of the lower court would have been a valid and final determination of the matters in controversy, without a recital of the reasons influencing the court in reaching his conclusion in rendering it, or

giving therein his opinion of either the law or the facts involved. Whether he reached his conclusions upon his view of the law or of the facts, one or both, was alike immaterial, and did not affect the finality or comprehensiveness of the decree. *"Utile per inutile non vitiatur."* We think the power of this court to revise the judgment of the lower court includes every matter comprehended by the scope of the judgment complained of, and that is the proper practice. If it is holden that this court can only review such issue or issues of law or fact as the court below considered and acted upon in rendering its judgment, then the fact of the consideration and action upon each issue involved in the pleadings, by the lower court, would be an issue before this court, necessarily determinable before it could determine what portion of the record would be reviewable. It might be that the judgment of the lower court was upon an issue deemed by this court to be immaterial, and for that cause held to be erroneous; yet an examination of the whole record might disclose material issues, with evidence showing that the judgment of the lower court, if rendered upon those issues, would have been correct; yet if this court is restricted in its review to those issues only held by the lower court to have been material, the case would have to be remanded, and the litigation uselessly and unnecessarily protracted. In *State v. Cannon,* 44 La. Ann., 738; 11 So., 88, the court announces on a rehearing the correct doctrine, in saying: "The court below decides a cause on whatever point it deems material, but it is the province of this court to revise its judgment, not the grounds upon which it was rendered. Its decision requires us to examine the case on all the grounds it presents, if that be necessary to a rightful determination of the case; for the error of the judge, a question for which relief is sought at our hands, may be his failure to take into consideration an objection on which his judgment is silent. Under the principle contended for, there might be as many appeals as points in the case, if he acted on only one at a time, and decided erroneously. It has been the

uniform practice of this court, as it is the real intent of the statute, that the decision of the first judge on the merits brings up the whole case. The contrary doctrine would be productive of intolerable expense and delay." We are confirmed in the correctness of our conclusion in this practice by the terms of § 4353, code 1892, which says: "The supreme court shall hear and determine all cases properly brought before it, . . . . and in case the judgment, sentence, or decree of the court below be reversed, the supreme court shall render such judgment, sentence, or decree as the court below should have rendered, unless it be necessary in consequence of its decision," etc. On appeal the appellant is restricted to an examination of the errors contained in his assignment of errors No such restriction rests upon the appellee; the distinction being "between a party seeking to reverse a judgment, and a party resisting the attempt."

It is argued by counsel for appellants that there is no issue in the pleadings to which the evidence as to what company constructed the road would be referable, in determining the claim of exemption. The gravamen of the bill is the construction of the road, its liability to taxation, its having escaped taxation for the years named, by reason of not being assessed, and its assessment by the railroad commissioners. The answer of defendants admits the construction of the road and its assessment by the railroad commissioners, but denies its liability to taxation, and avers that by reason of the road having been constructed by railroad companies having charters containing exemptions, or the right to appropriate the taxes accruing on the property to debts incurred in its construction until the earnings of the road would enable them to pay a dividend of 8 per centum on the capital stock, after paying its debts and liabilities, the property was not liable to the taxes assessed; that the road had never been able to pay said dividend out of its earnings; and that the commutation or privilege tax authorized by law in lieu of the *ad valorem* taxes had been paid for the years named by the company, shown by affidavits filed with

the sheriffs of the several counties in which the road was located, and obtained their receipts therefor. The defenses are affirmative, and, to be effectual, must be established by proof. Matters of defense, averred in an answer, not responsive to the allegations of the bill, are at issue without replication. No replication to an answer is required in chancery. Section 540, code 1892.

It is suggested that an examination of the evidence is unnecessary, unless this court should first decide that the chancellor erred either on the point of estoppel, or on the point of violation of the fourteenth amendment to the constitution of the United States. The fact of the construction of the road by the Louisville, New Orleans & Texas Railroad Company, or its constituent companies or company, having under its or their charters exemption or right of appropriation of taxes, is a fact necessary to be considered, preliminary to an application of the legal principles contended for by appellants. If the fact be that the road was constructed by a company or companies having no exemption or right of appropriation in their charters, then no claim of exemption could arise, nor estoppel be asserted.

The legal principles involved in this case are not *res adjudicata* by reason of any former adjudication of this court. While the parties are the same, and the subject-matter the same, yet the cause of action is wholly different. In the case at bar the cause of action is the taxes for the years 1886 to 1891, inclusive, and they are entirely separate and distinct from the taxes of other years. Some of the same legal question involved here were presented and decided by this court in cases between the same parties, and invite the application of the principles of *stare, decisis,* but are not *res adjudicata.* 77 Miss., 265, 266; 24 So., 200, 317; 28 So., 956. The contention here rests mainly upon sec. 21 of the charter of the Mobile & Northwestern Railroad Company (Laws, 1870, p. 268), incorporated into the charters of the Memphis & Vicksburg Railroad Company

(Laws, 1870, pp. 316-326), the Mississippi Valley & Ship Island Railroad Company (Laws, 1871, p. 237, and Laws, 1873, p. 562), the Natchez, Jackson & Columbus Railroad Company (Laws, 1870, p. 327), the act authorizing consolidation of the Memphis & Vicksburg Railroad Company and the Mississippi Valley & Ship Island Railroad Company (Laws, 1882, p. 1011), and the act amendatory thereof (Laws, 1884, p. 936), and acts of the legislature affecting same, by express reference or necessary implication. Section 21, *supra,* granted to the various roads above named the right to appropriate the taxes annually accruing thereon to the debts incurred by them, prospectively, in the construction of the road, or for money borrowed by the company, upon lands or otherwise, to be used in constructing the road. The right of appropriation was to continue for thirty years, unless the earnings of the road (annual) would enable the road to pay a dividend on its capital stock of 8 per centum, after paying its debts and liabilities. This appropriation by the company was to be evidenced by an affidavit made by the president or cashier of the road, filed with the sheriff of the various counties trayersed by the road, upon the filing of which affidavit the sheriff was to execute a receipt in full for said taxes for the year. Laws, 1870, p. 268. If the legislature, in enacting sec. 21, *supra,* exceeded the authority granted them by the constitution of Mississippi, or were acting in controvention of the provisions of the constitution, then their act was void, and could not confer rights upon any one. This question was presented thoroughly, and ably discussed, exhaustively considered, and decided by this court, in the case of *Railroad Co.* v. *Adams,* reported in 77 Miss., 194; 24 So., 200, 317; 28 So., 956, *et seq.;* and it was there held that such attempt by the legislature to confer a special exemption upon a special person or corporation would be in violation of sec. 13, art. 12, of the constitution of Mississippi of 1869, and therefore void. A careful examination of the question there decided confirms us in the correctness of the conclusion then reached,

and we adhere to and confirm the same.  By the constitution, taxes are imposed upon all property alike, owned by either individuals or corporations, and special exemptions to the one or the other were forbidden by the organic law.

The distinguished counsel for appellant very ably and forcibly argues that even if the alleged exemption or appropriation of taxes made by said sec. 21 was void *ab initio* by reason of the constitution of Mississippi of 1869 being mandatory, or, if not so void, was repealed by subsequent statutes enacted by the legislature, yet the appellants being a new company, coming into existence in October, 1892, and making large investments in the property of the Louisville, New Orleans & Texas Railroad Company, which includes the Natchez, Jackson & Columbus Railroad property, at a time when the alleged exemptions or appropriations of taxes were recognized as valid by the legislative, executive, and judicial departments of the state, there being at the time of the purchase of said property by appellants no claim of taxes upon said property by the state, nor had been such claim or lien upon the property for taxes delinquent for past years, and that appellants were not the owners of the property during the time for which said taxes are said to be delinquent and accrued thereon, therefore, as to said claim for taxes, they are innocent purchasers for a valuable consideration, without notice of any claim for taxes thereon by the state; that they purchased said property, incurred liabilities, and acquired rights on the faith of the status then existing by reason of such recognition by the departments of the state, and expressly on the faith that there were no outstanding taxes resting on said property; and that the state was therefore now estopped from collecting taxes upon said property for said years.  This contention presents an exceedingly interesting and important question—important to the state and the citizens alike—and it has received our careful consideration.  The power of the legislature, within constitutional limits, to levy taxes for the support of the government, and to provide means

for their collection, is limited only by the necessity of the occasion; and it is their duty, under constitutional direction, to see that all property of every person, natural and artificial, shall bear its just and equal proportion of the burdens of government. If any property liable under existing law to taxation has escaped taxation, it was the duty of the legislature to remedy the evil by providing means for its assessment and collection, else property that had been assessed and paid on would be bearing an unequal, and, therefore, an unjust, proportion of the public burden.   No one can justly complain when his property is made to contribute its just and equal proportion, according to its value, toward the burden of government.   Each person enjoys the privileges and receives the protection and the benefits resultant from the government, and the duty rests alike upon each to contribute in proportion to his ability to its maintenance.   If property is liable to taxation, and has escaped bearing its part of the burden from any cause, it is the essence of justice that such property shall be made to contribute its proportion to the general fund necessary to the maintenance of the government.   That property shall be liable in specie to the tax upon itself is eminently just and indispensable, and forms the basis of our system of taxation.   The constitutional provisions that "all property shall be taxed in proportion to its value" (sec. 20, art. 12. constitution of Mississippi, 1869, and sec. 13, art. 12, *Id.*), that "the property of all corporations for pecuniary profit shall be subject to taxation the same as that of individuals," were declarations of the public will, self-imposing, leaving to the legislature only the duty of providing the means for collection of that which the constitution had imposed.   Except as may be authorized by the constitution, the legislature has no power to relieve the property of the burden of taxation thus imposed by the will of the whole people, and any efforts on the part of the legislature to create exemptions or grant rights of appropriations of taxes contrary to the provisions of the constitution are void, and no rights can be predicated on

such enactments, where special exemptions to special persons or corporations are attempted. Unless the legislature provides the means for the assessment and collection of taxes, they remain uncollected, but such failure in nowise relieves the property from the burden imposed by the constitution. It still remains subject to the tax, and upon the discovery of such failure it is the duty of the legislature to remedy the omission by providing means for the assessment and collection of the tax so omitted. Its power to provide such means is coextensive with its duty. This power and its consequent duty are highly salutary and indispensable, and cannot be avoided in its exercise because in some instances the property has changed ownership, and for that reason individual hardship may result. The burden was upon the property, by the highest law of the land, and followed it into whosoever's hands it may go. See *Tallman* v. *City of Janesville,* 17 Wis., 76; *Cross* v. *City of Milwaukee,* 19 Wis., 509; *State* v. *Fullerton,* 143 Mo., 685; 44 S. W., 714; *Canal Co.* v. *Conner,* 50 Pa., 399; *Railroad Co.* v. *Dennis,* 116 U. S., 665; 6 Sup. Ct., 625; 29 L. Ed., 770; *Houston & T. Cent. R. R. Co.* v. *Texas,* 177 U. S., 66; 20 Sup. Ct., 545; 44 L. Ed., 673. Assessment of back taxes, where the property has changed owners, does not violate any constitutional right guaranteed by either the state or United States constitutions. See *Winona & St. P. Land Co.* v. *Minnesota,* 159 U. S., 526; 16 Sup. Ct., 83; 40 L. Ed., 247; *Weyerhaueser* v. *Same,* 176 U. S., 550; 20 Sup. Ct., 485; 44 L. Ed., 583; *Railroad Co.* v. *Reynolds,* 183 U. S., 475; 22 Sup. Ct., 176; 46 L. Ed., 283; *United States Trust Co.* v. *New Mexico,* 183 U. S., 539; 22 Sup. Ct., 172; 46 L. Ed., 345. When the legislature, in the exercise of its constitutional powers, has provided for the assessment and collection of back taxes upon property, and has made no provision for excepting from its operation property the ownership of which has changed since the default occurred, this court cannot ingraft exceptions upon such statute. Courts can only decide what is the law, as declared by the constitution or enacted

by the legislature. The application of the law cannot vary, however meritorious the particular case may appear. The property in controversy here is liable for the taxes for the years claimed, unless relieved therefrom by the operation of the rule of property as it existed at the time the appellants became owners of it—so operating as to create an estoppel upon the state. A "rule of property" is a "settled legal principle governing the ownership and devolution of property." This principle can be settled only by the supreme court of the state, and its utterances, in cases pending before it involving the title to property, construing statutes or constitutional provisions, have the effect of establishing a rule of property to the extent only that the particular statute or constitutional provision was in that case involved, or necessarily considered and determined by the court in the case then pending before it; and such rule of property, when so established, becomes and remains the settled legal principle governing the acquisition and title to property, to which construction is applicable, so long as such decision remains unreversed by the supreme court giving such construction. If such construction is given upon an issue directly involved in the case, or necessarily considered, and necessitates the application of the judicial mind to the precise question, then immediately the rule of property established thereby becomes the law for similar cases, and is upheld and continued in the future by the doctrine of *stare decisis*. The acquiring of the ownership of property is always accompanied with the vesting of rights under and pursuant to the then existing law as declared by the supreme court of the state. This law so declared remains a rule of property until that law shall be changed by the state supreme court overruling or modifying such prior decision, in which case the rule of property would be changed to correspond with the latest utterance of the supreme court upon the subject. This change in the rule of property would only affect transactions occurring subsequent to such change in the decision of the state supreme court. As

to all transactions affecting the ownership or devolution of property, occurring prior to such change in the rule, they would be controlled by the rule of property existing at the time of their occurrence. All rights of property must be governed and protected by the laws existing, and as they existed, at the time of the vesting of the right. This principle, so manifestly in accordance with the plainest principles of justice, receives our fullest approval, and will be applied in all cases coming within its scope. It is binding, in proper cases, upon the state as upon the individual. The state has not one law for the citizen, and a different application of it to itself. It has received the sanction of the highest court of the land in many cases. In *Gelpcke v. City of Dubuque*, 1 Wall., 206; 17 L. Ed., 520, the supreme court of the United States says: "The sound and true rule is that if the contract, when made, was valid by the law of the state as then expounded by all departments of the government, and administered in its courts of justice, its validity and obligation cannot be impaired by any subsequent action of legislation, or decision of its courts altering the construction of the law. The same rule applies where there is a change of judicial decision as to the constitutional power of the legislature to enact the law." The constitutional barrier to legislation impairing the obligation of contracts applies also to decisions altering the law, as previously expounded, so as to affect the obligations of existing contracts made on the faith of the earlier adjudications. See, also, *Olcott v. Supervisors*, 16 Wall., 689; 21 L. Ed., 382; *Douglass v. Pike Co.*, 101 U. S., 677; 25 L. Ed., 968; Suth. St. Const., sec. 319.

We have carefully examined all the decisions of this court in which sec. 21 of the Mobile & Northwestern Railroad Company charter, *ubi supra*, was involved, and are confirmed in the correctness of the conclusion reached by this court in their examination of them in the case of *Railroad Co. v. Adams*, 77 Miss., 194; 24 So., 200, 317; 28 So., 956, that in none of them,

prior to that case, was the constitutionality of said section presented or decided.

The able counsel for appellant in responding to the questions submitted for reargument at this term—viz., "(a) Was the precise point whether the twenty-first section of the Mobile & Northwestern charter violated the constitution of 1869 ever raised by the pleadings, and expressly decided by this court, prior to the decision in *Railroad Co.* v. *Adams,* 77 Miss., 194; 24 So., 200, 317; 28 So., 956? (b) If not so expressly presented by the pleadings and expressly decided by this court, was there ever a decision by this court prior to *Railroad Co.* v. *Adams,* 77 Miss., 194; 24 So., 200, 317; 28 So., 956, which decision could not have been rendered without this court having held that said twenty-first section did not violate the constitution of 1869, and in which, therefore, the decision that said twenty-first section did not violate the constitution of 1869 was necessarily made?"—admits there was no decision expressly made, but insists that the question was necessarily involved both in the pleadings and decision of the following named cases, viz.: *Mississippi Mills* v. *Cook,* 56 Miss., 40; *McCulloch* v. *Stone,* 64 Miss., 378; 8 So., 236; *Railroad Co.* v. *Thomas,* 65 Miss., 553; 5 So., 108; *Railway Co.* v. *Taylor,* 68 Miss., 361; 8 So., 675. The principle settled by the *Mississippi Mills case* is not applicable to the case at bar. That case decided nothing save that the general exemption granted by the act of 1873 was repealable, and was repealed by the act of 1877. The constitutionality of the grant of exemption involved therein, which was general, not special, was not argued or considered by the court, but seems to have been conceded; and the whole contention then hinged upon the repealability of the statute, not its constitutionality. See *Railroad Co.* v. *Adams,* 77 Miss., 194; 24 So., 200, 317; 28 So., 956. And in addition to that act of 1873, amendatory of the act of 1872, under the provisions of which the Mississippi Mills claimed exemption, was not an act granting a special exemption to a special corporation, but only sought to

extend the provisions of a general law to a corporation which, being in operation at the time the general law was passed was at that time not within its provisions; but the buildings and machinery of the Mississippi Mills having been destroyed by fire after the passage of the act of 1872, its subsequent building and operation brought it within the terms of . the act of 1872, as well as its intention. *McCulloch* v. *Stone* was an action of mandamus to compel the auditor to make deed to lands held by the state for delinquent taxes. These lands were outlying lands owned by the Memphis & Vicksburg Railroad Company, which had been released to the company by the auditor because of the provisions of the act of 1884 (laws, 1884, p. 29), without requiring the payment of the taxes. Incidentally, the twenty-first section, *ubi supra,* was referred to, and the court held that it found nothing in the terms of the act which would include outlying lands in the exemption, and held the deed of the auditor, therefore, void. The constitutionality of sec. 21 was not necessary to be considered, and was not mentioned or decided by the court. *Railway Co.* v. *Thomas* involved only the construction of the terms of the charter as to when the exemption therein claimed would begin. The constitutionality of the exemption was not considered or decided. In *Railway Co.* v. *Taylor,* 68 Miss., 361; 8 So., 675, the point involved was the liability to taxation of a short spur track, one and one-half miles in extent, and a steam digger, for the year 1887, under said sec. 21, and involved the construction of said sec. 21, *supra.* Some confusion exists in a reference therein made, the exemption therein named being referred to as being contained in the charter of the Mississippi Valley & Ship Island Railroad. The charter of the Mississippi Valley & Ship Island Railroad, while owned by the projectors of the Louisville, New Orleans & Texas Railroad, did not enter into the consolidation of the various companies by which said road came into existence, but the said charter contained the identical sec. 21, *supra,* which is contained

in the charter of the Memphis & Vicksburg Railroad Company, one of the constituent companies entering into said consolidation. The court held that the consolidated road was the recipient of said exemption or contract of appropriation by chap. 555, acts 1882, but this case was not decided until January 26, 1891, and in it the constitutionality of the alleged contract of appropriation was not involved or decided, nor was the constitutionality of said act of exemption necessarily involved. In none of the cases, except the *Taylor case,* were the terms of sec. 21, *supra,* necessarily involved in the rendering of the decision, because in each case it was the question of outlying lands, not included in the terms of the section involved. In the *Taylor case* the section was involved, and its terms held to include the case presented, but its constitutionality was never involved or decided. The question of *stare decisis,* and its consequent effects, can only be invoked as to the questions directly involved, and expressly decided, or which were necessarily considered and determined by the court, and without which such consideration and determination the decision could not have been rendered. In none of the cases decided by this court prior to the decision of *Railroad Co.* v. *Adams,* 77 Miss., 194; 24 So., 200, 317; 28 So., 956, was the constitutionality of said sec. 21 drawn in question. It is well said by the supreme court of the United States in the case of *Boyd* v. *Alabama,* 94 U. S., 645; 24 L. Ed., 302: "Courts seldom undertake in any case to pass upon the validity of legislation where the question is not made by the parties. Their habit is to meet questions of that kind when they are raised, but not to anticipate them. Until then, they will construe the acts presented for their consideration, define their meaning, and enforce their provisions. The fact that acts may in this way have been often before the court is never deemed a reason for not subsequently considering their validity when that question is presented. Previous adjudications upon other points do not operate as an estoppel against the parties in new cases, nor conclude the court upon the con-

stitutionality of the acts because that point might have been raised and determined in the first instance." A rule of property cannot exist by reason alone of acts of the legislature, however long in existence or often re-enacted, or acted upon by those interested in the acquisition or disposition of property. Nor can it result from the omission of executive officers to perform their duties, or from their acquiescence in the meaning or supposed validity of acts of the legislature. To give such effect would be to disregard the fundamental principle of our government, and practically eliminate from its structure one of its co-ordinate branches—the judiciary—by taking from it the power and duty of determining the law. It is one of the highest and most necessary duties of the supreme court to determine the constitutionality of an act of the legislature, when such question is properly presented to it for determination; and this duty cannot be avoided by it in a proper case because results not contemplated by parties may be occasioned thereby. "The original and supreme will organizes the government, and assigns to the different departments their respective powers—legislative, judicial, and executive. The power of the legislature is limited and defined, and, that those limits may not be mistaken or forgotten, the constitution is written. To what purpose are powers limited, and to what purpose is that limitation committed to writing, if these limits may at any time be passed by those intended to be restrained." A rule of property cannot result except from judicial decision, and the decisions only extend to questions involved and decided by them. Counsel for appellants refer in this connection to the case of *Farrior* v. *Security Co.,* 92 Ala., 176; 9 So., 532; 12 L. R. A., 856, and quotes as follows: "Persons contracting are presumed to know the law, but neither they nor their legal advisors are presumed to know the law better than the courts, or to know what the law will be at some future day. Any principle or rule which deprives a person of property acquired by him, or the benefit of a contract entered into by him, in reliance upon strict compliance with the

law as interpreted by the court of last resort at the time of the transaction—and no fault can be imputed to him in the matter of the contract, unless it be a fault not to foresee and provide against future alterations in the construction of the law—must be radically wrong. Such principle of law would clog business transactions, unsettle titles, and destroy all confidence in the decisions of the supreme court of the state. We hold the doctrine to be sound and firmly established by the decisions of the supreme court of the United States, and enunciated by many eminent text-writers, that rights of property and the benefits of investments acquired by contract in reliance upon a statute as construed by the supreme court of the state, and which were valid contracts under the statute as thus interpreted when the contracts or investments were made, cannot be annulled or divested by subsequent decisions of the same court overruling the former decisions."

We have quoted this expression of the principle at length, that we might express our concurrence in it, and we have carefully re-examined the previous decision of this court, to ascertain if it could be applied in the case at bar. But, as before stated, in no decision prior to *Railroad Co.* v. *Adams*, 77 Miss., 194; 24 So., 200, 317; 28 So., 956, was the constitutionality or the unconstitutionality of said sec. 21, *supra*, "interpreted or promulgated" by this court, nor in any of them was the construction of said section necessarily involved, until the *Taylor case*, in 1891; and this case only interpreted the meaning of the section, not its constitutional validity. The decision of the *Taylor case* occurred in 1891, subsequent to the acquisition of the property by the appellants, and could not, therefore, be the basis of any investment by them, nor in any sense become a rule of property for prior transactions. In such case no room exists for presumptions. Manifestly no rule of property existed which could operate as an estoppel against the state in this suit. *Railroad Co.* v. *Adams*, 77 Miss., 282; 24 So., 200, 317; 28

So., 956; *Keokuk & W. R. Co.* v. *Missouri,* 152 U. S., 304;
14 Sup. Ct., 592; 38 L. Ed., 450.

Are the appellants in an attitude authorizing them to invoke
the principle of estoppel? Looking to the facts shown by the
record, briefly stated, the following conclusions appear: That
portion of the railroad designated as the "main line," extend-
ing from the Louisiana line (state), on the south, to the state
line of Tennessee, on the north, was constructed by the owners
of the charters of the Memphis & Vicksburg Railroad Company
and the New Orleans, Baton Rouge, Vicksburg & Memphis
Railroad Company. The same parties also owned the charter
of the Mississippi Valley & Ship Island Railroad Company,
but as the last-named company did not enter into the consoli-
dation, and as appellants disclaim any right asserted by them
in pleadings founded upon its charter, its consideration is there-
by eliminated, and only the first two named charters will be
considered. The property was acquired by the Yazoo & Mis-
sissippi Valley Railroad Company in October, 1892, by con-
solidation with the Louisville, New Orleans & Texas Railroad
Company. The Louisville, New Orleans & Texas Railroad
Company was formed on the 12th day of August, 1884, by the
consolidation of the Memphis & Vicksburg Railroad Company
and the New Orleans, Baton Rouge, Vicksburg & Memphis
Railroad Company with other companies not connected with
this investigation, they not being Mississippi companies. The
Memphis & Vicksburg charter authorized the construction of a
line of railroad from Vicksburg, in Warren county, Miss., north-
ward to the Tennessee state line, and contained in its charter
sec. 21, *ubi supra,* authorizing appropriation of taxes to debts
incurred in its construction. The New Orleans, Baton Rouge,
Vicksburg & Memphis charter authorized the construction of a
line of railroad from the Louisiana state line, on the south,
to the Tennessee state line, on the north, toward the cities
of New Orleans, La., and Memphis, Tenn., respectively, but
did not contain any authority to appropriate taxes to its debts.

The formation of the Louisville, New Orleans & Texas Railroad Company occurred by consolidation, as aforesaid, on 12th of August, 1884; the main line being at that time about completed for the running of through trains from Memphis to New Orleans, the first train running through being in October, 1884. The consolidation resulting in the formation of the Louisville, New Orleans & Texas Railroad Company was under and pursuant to the act of the legislature (laws, 1882, p. 1011), and act amendatory thereof (laws, 1884, p. 936), both of which contained sec. 21, *ubi supra.* In the early part of the year 1882, R. T. Wilson & Co. became the owners of the charter of the Memphis & Vicksburg Company, and in the summer of 1882 the same firm became the owners of the charter of the New Orleans, Baton Rouge, Vicksburg & Memphis Railroad Company, and the last company organized in August, 1882. In May, 1882, R. T. Wilson & Co. established an office in Vicksburg, Miss., and began the construction of the road. Shortly afterwards Mr. C. F. Huntingdon became interested in the enterprise, and R. T. Wilson & Co. and C. F. Huntingdon organized the Financial Improvement Company. On December 20, 1882, the owners of the charters contracted with the Financial Improvement Company, in the name of the New Orleans, Baton Rouge, Vicksburg & Memphis Railroad Company, to construct the line of road from the Louisiana state line, on the south, to the Tennessee state line, on the north, and on the same day contracted in the name of the Memphis & Vicksburg Railroad Company with W. M. Johnson, a member of the firm of R. T. Wilson & Co., to construct a line of road from Vicksburg, Miss., north to the Tennessee state line. This contract was assigned on the same day to the Mississippi Valley Construction Company, who subsequently assigned the same to the Financial Improvement Company. Practically, the line was constructed through the entire state of Mississippi by the Financial Improvement Company under its original contract for the entire line, and from Vicksburg north under its individual contract

for that portion of the road, as well as assignee of the contract of W. M. Johnson for same portion of road. No contract appears in the record for that portion of the line south from Vicksburg to the Louisiana state line, except one made by the New Orleans, Baton Rouge, Vicksburg & Memphis Railroad Company; and, as this company had no charter provision authorizing the appropriation of taxes, manifestly, as to that part of the line, no basis for claim of the road having been constructed by a road claiming charter exemption could exist. The entire line seems to have been constructed as a single business enterprise, with Vicksburg as a central office. No intent appears to have existed in the minds of the owners of both charters to restrict the building of any portion of the line specially to either charter, but rather to build the whole as a unified line—a continuous enterprise under the authority of both charters. The deeds to the right of way, accounts for construction for purchase of material, and all expenses connected therewith, are made out and paid in the name of either company indiscriminately, and so inextricably intermingled that it is an impossibility to locate any part of the line as having been constructed solely by either one of the companies; some of the deeds to right of way and some accounts being made in the name of the Louisville, New Orleans & Texas Railroad Company some time prior to that road coming into existence. The reason of this failure to have and keep separate accounts during the time the road was being constructed is shown by the testimony of R. T. Wilson, who was president of the constituent companies at the time, and who was president of the New Orleans & Texas Railroad Company after its organization, who says: "It was the purpose of the parties to consolidate under the act of March 3, 1882, as soon as found practicable and expedient to do so. From the first, the enterprise was carried on as a single business enterprise—a unified railroad—under inducements and solely in reliance upon the provisions of said act. The road was built under the charters of the Memphis

& Vicksburg and the New Orleans, Baton Rouge, Vicksburg & Memphis Railroads, in Mississippi." Thus it appears that no portion of the road was built alone by the contract with and from the Memphis & Vicksburg Company, and therefore the provisions of sec. 21, *supra,* contained in that charter, cannot be considered as any basis of a claim for exemption thereunder.

The only basis remaining to be considered, upon which the appellants' claim for exemption can rest, is the act of March 3, 1882, and the act of 1884, *supra,* amendatory thereof, authorizing consolidation, and which contained sec. 21, *ubi supra,* applicable by its terms alone to the consolidated company when organized thereunder. The Louisville, New Orleans & Texas Railroad Company, until and as the result of the consolidation of its constituent companies, did not exist, at which time the constituent companies, as such, ceased to exist, and the new company came into existence. This consolidation occurred when the main line was practically completed, and, as the alleged right of appropriation of taxes was prospective in its proposed effects, clearly it could not act retroactively, by applying to a road previously built. As to the branch lines extended by the Louisville, New Orleans & Texas Railroad Company after its organization, the right of appropriation of taxes claimed must fail for two reasons: (1) For lack of legislative authority under the constitution to make such grant; (2) the evidence does not show clearly the amount expended in their construction, nor that the earnings of the road was not sufficient at the time of their construction to have paid 8 per centum dividend on the capital stock, as provided in the act relied on, on the occurrence of which ability to pay such dividend the right of appropriation ceased. The party pleading exemption from taxation has imposed upon him the burden of clearly showing his right to the immunity claimed—not alone to its having existed, but also as to its continuation to the time for which the taxes are claimed to be due—and if either of such facts may be fairly said to remain in doubt, from the evidence, the claim must be denied.

*Greenville Ice & Coal Co.* v. *City of Greenville,* 69 Miss., 91; 10 So., 574; Desty, Tax'n, p. 135.

In addition to preceding reasons given why the exemption claimed by reason of charter provisions of the constituent companies cannot avail appellants, an examination of the statutes passed subsequent to their enactment shows that such provisions were repealed prior to the acquisition of those charters by R. T. Wilson & Co., and prior to any expense being incurred thereunder. In 1875 (laws, 1875, p. 66) the legislature passed an act entitled "An act to regulate railroad taxation," sec. 1 of which provides "that every railroad company, whose line is in whole or in part in this state, shall pay on the 31st day of December, in each and every year, a privilege tax, as follows." Section 2 provides for report of length of road by a proper officer, and a penalty for failure to make report. Section 3 provides for damages for failure to pay the tax, and provides means for collecting such delinquent tax. Section 4 provides "that all acts and parts of acts, under which taxes may be collected from railroad companies, otherwise than as provided in this act, are hereby repealed." In 1878 (laws, 1878, p. 87) the legislature passed an act entitled "An act supplementary and amendatory of" above act of 1875. This act used the same language quoted above in sec. 1 of the act amended, and increased the amount of privilege tax per mile, and provided "that this act shall not apply to the West Feliciana Railroad." In 1880 the code of 1880 was adopted, and by §§ 597 to 608, inclusive, therein, each railroad company owning and operating a road in this state is required to pay taxes, with this proviso: "That no railroad company shall be subject to taxation, while the same is in process of construction, but if any part of any road shall be finished, and used for profit, the part so finished shall be taxed, although the whole road may not be finished." In neither the act of 1875, 1878, nor 1880, are charters containing exemption from taxation specially mentioned, but the language used in each, by necessary implication, repeals such ex-

emption provisions previously enacted. Repeals by implication are not favored, and only result where the language used in the repealing statute, considered in its usual and general meaning and acceptation, evinces a purpose of the legislature irreconcilable with the law as enacted by the law repealed. The purpose of the later act is a potent factor in determining the meaning of the language employed, and must be considered in reaching a right result. The entire law must be considered together, and force and effect given to all of its parts, considered as a whole. The statutes declaring each and every railroad in the state liable to taxation, and taxing them, are irreconcilable with the previous statutes exempting them from taxation, continuing in force, and necessarily operate as a repeal of the previous law in conflict with them. Thus prior to the enactment of the statute of 1882 (laws, 1882, p. 1011) authorizing the consolidation of the constituent companies, the immunity from taxation granted them by the provisions of their charters had been repealed; and it follows that the language of sec. 1 of said act of 1882, providing "that the company so formed by such consolidation should have, enjoy, and possess all the rights, grants, and immunities now possessed by such companies," did not have the effect of granting or conveying any immunity from taxation, for that immunity was not then possessed by the constituent companies, having been previously lost by repeal. In 1884 (laws, 1884, pp. 29-31), §§ 607, 608, code 1880, were amended, and the amendment contained a proviso as follows: "That the provisions of this act shall not have the effect to tax any of the lands of the Memphis & Vicksburg Railroad Company, until the 1st day of February, 1886," and that the Natchez, Jackson & Columbus Railroad Company should pay a privilege tax of $40 per mile "after the expiration of exemption as provided in its charter and acts amendatory thereof." In neither of the extracts above quoted was there any intent to create or confer exemptions, they were legislative recognition of exemptions; but they were only legislative recognitions of ex-

emptions supposed to exist, and expressive of the purpose of
the act as to them, which purpose could only be of effect in
event of such existence, in which event the language and in-
tent concur that they were not to be affected thereby. In
March, 1886 (laws, 1886, p. 23) the above-named act of 1884
was amended. Section 6 of the amendatory act provides "that
the act entitled 'An act to amend §§ 607, 608 of code of 1880,
in relation to privilege tax on railroads;' approved March 13,
1884, be so amended as to fix the amount of privilege tax, to
be paid by the several railroad companies mentioned and re-
ferred to in said act, at sums twenty-five per centum greater,
respectively, than the sums mentioned in said act, and here-
after said railroad companies shall pay privilege taxes, re-
spectively, twenty-five per centum greater per mile, as fixed in
said act." The effect and purpose of this amendatory act of
1886 was to increase the privilege tax 25 per cent greater than
provided in the act of which it was amendatory. No other
provision of the act of 1884 was affected thereby. In 1888
(laws, 1888, p. 49) an act was passed providing for "the assess-
ment and collection of past due and unpaid taxes on railroads
which have escaped the payment thereof." Section 1 provides
that "every railroad, which has failed to pay the taxes for
which the same was liable, for any year for which it was so
liable, such railroad not being exempt by law or its charters
from taxation for said years, shall be assessed." The act of
1890 (laws, 1890, p. 13) manifests the same legislative pur-
pose to refrain from interfering with exemption contained in
railroad charters, as appears in the act of 1880. In none of
them, quoted above, is there any language used indicating a
purpose of the legislature to create, revive, or confer exemp-
tions. In 1878 (laws, 1878, p. 233) an act entitled "An act
supplemental to the acts of incorporation of certain railroad
companies," approved August 8, 1870, was passed, amending
the charter of the Natchez, Jackson & Columbus Railroad Com-

pany so as to include therein sec. 21, *ubi supra*, but this act was repealed by code 1880 §§ 597-608, *supra*.

As to the state, the Illinois Central Railroad Company does not occupy the position of an innocent purchaser for valuable consideration without notice, either in law or equity, because (1) the grant proposing exemption from taxation, contained in the charter of the Memphis & Vicksburg Railroad Company, had been repealed before any work was begun thereunder, and a similar grant to the Natchez, Jackson & Columbus Railroad had been repealed long before any interest therein had been acquired by the appellants, and the proposal of exemption contained in the act of 1882 and the act of 1884, amendatory thereof, authorizing the consolidation of the companies therein named, was wholly prospective, and, even if it had been a valid grant, could not be claimed by a company coming into existence after the road was built; (2) the grant of exemption being forbidden by the constitution in such cases, and there not having been any decision of the state supreme court holding the grant valid, no rule of property affecting this property in controversy existed, out of which alone an equity could arise. Estoppel against the state could not occur under such circumstances. Rights which the legislature, by reason of constitutional inhibition, could not confer, cannot result from or be founded upon the invalid act. That which cannot be done directly cannot thus be accomplished indirectly. At the time the Yazoo & Mississippi Valley Railroad acquired the property in controversy, and at the time the Illinois Central Railroad Company became interested therein, the constitutionality of said sec. 21 was an open question, and the rule of *caveat emptor* applied in full force. In *Louisville & N. R. Co. v. Kentucky,* 161 U. S., 691; 16 Sup. Ct., 719; 40 L. Ed., 849, the court says: "In reply to the argument that millions of dollars have been invested in the securities of the company upon the faith of what was supposed to be its admitted power, it is sufficient

---

to say that, in making such investments, capitalists were bound to know the authority of the company under its charter, and to put the proper interpretation upon it, and that we are not at liberty to presume that investments were made upon the faith of powers that do not exist; and, if they were, the commonwealth is not bound to respect investments made under a misapprehension of the law." The property at that time was charged with the liability to the taxes, now claimed, and the fact that at that time the property had not been assessed for taxation in nowise relieved it of the burden and of the duty of paying them.

*The judgment of the lower court is affirmed.*

